UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WILLARD K. TOM
General Counsel
LEONARD L. GORDON
Regional Director
Northeast Region

CAROLE A. PAYNTER (cpaynter@ftc.gov)
KAREN DAHLBERG (kdahlberg@ftc.gov)
Federal Trade Commission
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
tel: 212-607-2829/ fax: 212-607-2822

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>CONSUMER HEALTH BENEFITS ASSOCIATION, organized as a Missouri not-for-profit, also doing business as CHBA,<br><br>NATIONAL ASSOCIATION FOR AMERICANS, organized as a Missouri not-for-profit, also doing business as NAFA,<br><br>NATIONAL BENEFITS CONSULTANTS, LLC, a Florida limited liability company, also doing business as NBC,<br><br>NATIONAL BENEFITS SOLUTIONS, LLC, a Florida limited liability company, also doing business as NBS,<br><br>LOUIS LEO, individually, as a Managing Member of NATIONAL BENEFITS CONSULTANTS, LLC, as a Managing Member of NATIONAL BENEFITS SOLUTIONS, LLC, and as the Vice President and Treasurer of CONSUMER HEALTH BENEFITS ASSOCIATION, | **FILED UNDER SEAL**<br><br>**Case No. _____**<br><br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

RON WERNER, individually, as a Managing
Member of NATIONAL BENEFITS
CONSULTANTS, LLC, as a Managing Member of
NATIONAL BENEFITS SOLUTIONS, LLC, and as
President and Managing Partner of CONSUMER
HEALTH BENEFITS ASSOCIATION, and

RITA WERNER, individually, and as Senior Vice
President and Director of Operations of CONSUMER
HEALTH BENEFITS ASSOCIATION,

      Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and

Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to

obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of

contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other

equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15

U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a),

and 1345, and 15 U.S.C. §§ 45(a), 53(b), 6102(c), and 6105(b).

3.      Venue is proper in this District under 28 U.S.C. § 1391 (b) and (c), and 15 U.S.C.

§ 53(b).

## PLAINTIFF

4.      Plaintiff FTC is an independent agency of the United States Government created

by statute. 15 U.S.C. §§ 41-58. The FTC is charged, among other things, with enforcement of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce. The FTC is also charged with enforcement of the Telemarketing Act. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, which prohibits deceptive and abusive telemarketing acts or practices. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 56(a)(2)(B), 57b, 6102(c), and 6105(b).

## DEFENDANTS

5.      Defendant Consumer Health Benefits Association ("CHBA") is a purported Missouri not-for-profit with its principal place of business at 4875 Coconut Creek Parkway, Coconut Creek, Florida 33063-3944. Defendant CHBA previously used the website address www.ourchba.com, but that website is no longer operational. Defendant CHBA transacts or has transacted business in this district and throughout the United States. At times material to this Complaint, acting alone or in concert with others, Defendant CHBA has marketed, distributed, or sold a medical discount plan to consumers in this district and throughout the United States.

6.      Defendant National Association For Americans ("NAFA") is a purported Missouri not-for-profit with its principal place of business at 4875 Coconut Creek Parkway, Coconut Creek, Florida 33063-3944. Defendant NAFA mails materials using the return address of 1111 SW 21st Avenue, Suite 24, Fort Lauderdale, Florida 33312. At times material to this Complaint, acting alone or in concert with others, Defendant NAFA has marketed, distributed, or

sold a medical discount plan to consumers in this district and throughout the United States.

7.    Defendant National Benefits Consultants, LLC ("NBC") is a Florida limited liability company with its principal place of business at 4875 Coconut Creek Parkway, Coconut Creek, Florida 33063-3944. At times material to this Complaint, acting alone or in concert with others, Defendant NBC has marketed, distributed, or sold a medical discount plan to consumers in this district and throughout the United States.

8.    Defendant National Benefits Solutions, LLC ("NBS") is a Florida limited liability company with its principal place of business at 4875 Coconut Creek Parkway, Coconut Creek, Florida 33063-3944. Defendant NBS uses the website address www.getnbs.com. At times material to this Complaint, acting alone or in concert with others, Defendant NBS has marketed, distributed, or sold a medical discount plan to consumers in this district and throughout the United States.

9.    Defendant Louis Leo is a Managing Member of Defendants NBC and NBS, and Vice President and Treasurer of Defendant CHBA. His principal place of business is 4875 Coconut Creek Parkway, Coconut Creek, Florida 33063-3944. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Louis Leo, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

10.   Defendant Ron Werner is a Managing Member of Defendants NBC and NBS, and President and Managing Partner of Defendant CHBA. His principal place of business is 4875 Coconut Creek Parkway, Coconut Creek, Florida 33063-3944. At times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had

the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Ron Werner, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

11.     Defendant Rita Werner is the Senior Vice President and Director of Operations of Defendant CHBA. Her principal place of business is 4875 Coconut Creek Parkway, Coconut Creek, Florida 33063-3944. At times material to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Defendant Rita Werner, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## COMMERCE

12.     At all times material to this Complaint, Defendants have maintained a substantial course of trade or business in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## COMMON ENTERPRISE

13.     Defendants CHBA, NAFA, NBC, and NBS (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged below. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, office locations, and have commingled funds. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Individual Defendants Louis Leo, Ron Werner, and Rita Werner have formulated, directed, controlled, had

the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## DEFENDANTS' BUSINESS ACTIVITIES

### Defendants Solicit Consumers by Telemarketing

14.     Defendants NBC and NBS initiate outbound telephone calls to consumers in the United States to induce the purchase of goods or services.  NBC and NBS are "telemarketers" engaged in "telemarketing," as defined by the TSR, 16 C.F.R. § 310.2.

15.     Defendants CHBA and NAFA are "sellers," as defined by the TSR, 16 C.F.R. § 310.2.

16.     Since approximately 2003, Defendant NBC has engaged in telemarketing by a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephones and that involves more than one interstate telephone call.  Since approximately 2009, Defendant NBS has engaged in telemarketing by a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephones and that involves more than one interstate telephone call.

### Defendants Solicit Consumers Seeking Major Medical Health Insurance

17.     Since approximately 2003, Defendants, acting alone or in concert with others, have marketed and sold a medical discount plan throughout the country to consumers seeking major medical health insurance.  Major medical health insurance generally involves an arrangement between an insurance company and a consumer in which the insurance company agrees to pay a substantial portion of the healthcare expenses that the consumer might incur in exchange for payment from the consumer.  Defendants' plan, in contrast, purports to provide consumers with access to various discounts on healthcare and healthcare-related services and

products.

18.     Defendants' representatives call consumers whose contact information Defendants have obtained from websites to which the consumers submitted requests for information on major medical health insurance plans. Consumers seeking information on health insurance provided their contact information to this website with the expectation of obtaining information on major medical health insurance plans.

19.     Defendants' representatives often do not identify the company they are representing when they contact consumers. When consumers ask Defendants' representatives for the name of the company they are calling from, Defendants' representatives typically either refuse to answer or provide a convoluted answer to the question.

20.     Many of the consumers are uninsured because of a pre-existing medical condition that has excluded them from major medical health insurance coverage or because they have lost their coverage as a result of becoming unemployed. Some consumers or their family members require surgery or suffer from chronic diseases. Many consumers are uninsured or under insured simply because they cannot afford comprehensive major medical health insurance.

21.     At times, Defendants have represented either expressly or by implication that their medical discount plan is major medical health insurance, when, in fact, it is not. Defendants often describe the plan as "health insurance" or the equivalent of major medical health insurance to consumers, and Defendants use terms of art common in the major medical health insurance industry such as "PPO," "deductibles," "co-pay" and "network." Defendants typically fail to promptly disclose the nature of the goods or services they are selling.

22.     Even in instances where consumers are told that Defendants' plan is a medical discount plan and not actual major medical health insurance, Defendants misrepresent that the

medical discount plan will provide similar coverage to major medical health insurance and therefore is the equivalent of major medical health insurance. Defendants often claim that they work closely with Blue Cross Blue Shield, Aetna and United Healthcare, and that there is virtually no difference between Defendants' plan and a major medical health insurance plan.

23.     Numerous consumers purchase Defendants' plan under the impression that it is major medical health insurance or the equivalent of major medical health insurance based on the representations made by Defendants during the initial sales calls.

24.     Defendants use high pressure tactics during these calls to convince consumers to purchase the plan. Defendants tell some consumers that the offer is limited to a certain number of consumers in their state and that they must purchase the plan quickly, or that the offer will only be available that day and that the price will increase thereafter. Numerous consumers ask to see written materials regarding the plan prior to enrolling in it, but the sales representatives tell them that they will not mail any written materials until after the consumers purchase the plan.

25.     During the initial sales call, after consumers agree to enroll in the medical discount plan, the sales representatives tell consumers that a portion of the call will be recorded. Consumers are then coached on how to respond to the representatives' questions, and consumers are specifically instructed not to interrupt or ask questions because the representatives will have to start the taping process over from the beginning. Consumers who interrupt or ask questions are admonished and told that the process will be very time-consuming if they continue to do so.

26.     After enrollment, when consumers receive and review the written medical discount plan information, many discover that Defendants sold them a medical discount plan, not major medical health insurance. The discounts provided by the plan purportedly apply to doctor's office visits, vision exams, prescription eye wear, dental cleaning and exams, and

prescription drugs, through a network of providers with whom Defendants have supposedly contracted. The information they receive contains multiple disclaimers stating that the plan is not health insurance. Consumers do not receive insurance policies or insurance cards indicating that they have purchased health insurance of any kind.

27. Defendants charge consumers an enrollment fee ranging from $29 to $279.85, plus monthly service fees ranging from $65 to $259, to purchase the plan. Defendants charge consumers the enrollment fee and the fee for the first month of service at the time of enrollment, which generally occurs over the telephone and before consumers have received any written information regarding the plan.

**Defendants Falsely Represent Plan Discounts and Participating Providers**

28. During the initial sales calls, Defendants misrepresent that consumers will achieve significant savings on health care costs by purchasing Defendants' medical discount plan. Defendants tell some consumers that the plan will enable them to save up to 85% on medical expenses and that the average savings is 68% on all medical costs. In fact, few, if any, consumers save money through enrollment in Defendants' plan.

29. Defendants further misrepresent that their medical discount plan is widely accepted by doctors, pharmacies, and other health care facilities throughout the United States, including consumers' personal physicians. During initial telephone calls with consumers, sales representatives have represented that the plan is accepted wherever Blue Cross Blue Shield insurance plans are accepted, and that consumers can use their medical discount card with any doctor that accepts insurance.

30. On multiple occasions, consumers were unable to use the medical discount plan like major medical health insurance to pay for their medical expenses, or receive significant

discounts or savings on goods or services.  For example, one of Defendants' representatives told a New York City consumer that there were a number of "participating providers" in her area; however, when the consumer contacted the "participating providers" listed on CHBA's website, she was told that many of them did not accept the plan.  When another consumer tried to use the medical discount plan to obtain discounted prescription medicine for her daughter, the consumer received a "discounted" price that was higher than the price she previously paid for the medicine without the medical discount plan.

### Defendants Falsely Represent Their Cancellation and Refund Policy

31.    During the initial sales call, Defendants typically misrepresent to consumers that they will be able to cancel their participation in Defendants' plan at any time.  However, many consumers experience difficulty in canceling their participation because they often cannot reach a live representative when they call and are forced to call multiple times until they reach a representative.  When consumers do make contact with a live representative, Defendants' representatives often refuse to let consumers cancel, encouraging them to think about their decision and to call back at another time.  In some instances, Defendants tell consumers that enrollment has been cancelled, but Defendants continue charging or debiting the monthly fee from consumers' credit cards and bank accounts.

32.    Moreover, during the sales call, Defendants make various omissions regarding their "no refund" policy.  Defendants' written policy is that all fees paid by consumers are non-refundable.  However, during the initial sales call, Defendants are silent as to the "no refund" policy.  When consumers call to cancel and are able to speak with Defendants' representatives, they are then orally informed that there is a "no refund" policy.  Typically, consumers receive refunds only after they complain or threaten to complain to the Better Business Bureau, State

Attorney General's office or another consumer protection agency regarding Defendants'
deceptive sales practices.

### Defendant Louis Leo's Role

33.     Defendant Louis Leo, as a Managing Member of Defendants NBC and NBS, and
Vice President and Treasurer of Defendant CHBA, has orchestrated much of Corporate
Defendants' business activities, including: establishing telemarketing campaigns; designing the
medical discount plan; and overseeing sales practices.  Defendant Louis Leo is a signatory to at
least one bank account held in the name of Defendant NBC.

34.     Defendant Louis Leo is jointly and severally liable for the conduct of Corporate
Defendants because he has the authority to control and direct Corporate Defendants' activities;
has participated in those activities; and has had knowledge of Corporate Defendants'
misrepresentations and other misconduct.

### Defendant Ron Werner's Role

35.     Defendant Ron Werner, as a Managing Member of Defendants NBC and NBS,
and President and Managing Partner of Defendant CHBA, has orchestrated much of Corporate
Defendants' business activities, including: establishing telemarketing campaigns; designing the
medical discount plan; and overseeing sales practices.  Defendant Ron Werner is a signatory to
at least two bank accounts held in the name of Defendant NBC.

36.     Defendant Ron Werner is jointly and severally liable for the conduct of Corporate
Defendants because he has the authority to control and direct Corporate Defendants' activities;
has participated in those activities; and has had knowledge of Corporate Defendants'
misrepresentations and other misconduct.

### Defendant Rita Werner's Role

37.     Defendant Rita Werner, as the Senior Vice President and Director of Operations

of Defendant CHBA and an employee of NBC, has orchestrated much of Corporate Defendants'

business activities, including: participating in reviewing consumer complaints and overseeing

cancellation and refund practices.  Defendant Rita Werner is a signatory to at least one bank

account held in the name of Defendant NBC.

38.     Defendant Rita Werner is jointly and severally liable for the conduct of Corporate

Defendants because she has the authority to control and direct Corporate Defendants' activities;

has participated in those activities; and has had knowledge of Corporate Defendants'

misrepresentations and other misconduct.

## VIOLATIONS OF SECTION 5 OF THE FTC ACT

39.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts

or practices in or affecting commerce."

40.     Misrepresentations or deceptive omissions of material fact likely to mislead

consumers acting reasonably under the circumstances constitute deceptive acts or practices

prohibited by Section 5(a) of the FTC Act.

## COUNT I

### Making Misrepresentations of Material Fact

41.     In numerous instances, in connection with the marketing of Defendants' medical

discount plan, Defendants have represented, directly or indirectly, expressly or by implication,

that:

a.     Defendants' plan is a major medical health insurance plan or is the

equivalent of a major medical health insurance plan;

b.     Defendants' plan enables consumers to achieve significant savings on

12 of 18

health care costs;

        c.     Defendants' plan is widely accepted by doctors and other medical providers throughout the United States; and

        d.     Consumers may readily cancel their participation in Defendants' plan at any time.

     42.     In truth and in fact:

        a.     Defendants' plan is not a major medical health insurance plan or the equivalent of a major medical health insurance plan;

        b.     Defendants' plan does not enable consumers to achieve significant savings on health care costs;

        c.     Defendants' plan is not widely accepted by doctors and other medical providers throughout the United States; and

        d.     In numerous instances, consumers have been unable to readily cancel their participation in Defendants' plan.

     43.     Therefore, the representations set forth in Paragraph 41 are false and misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

     44.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act. The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

     45.     The TSR prohibits sellers and telemarketers from failing to disclose truthfully, in

a clear and conspicuous manner before a customer pays for goods or services offered, a statement informing the customer of any policy of not making refunds or cancellations.  16 C.F.R. § 310.3(a)(1)(iii).

46.    The TSR further prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer, and any material aspect of the performance, efficacy, nature, or central characteristics of the goods or services that are the subject of a sales offer.  16 C.F.R. §§ 310.3(a)(2)(ii) and (a)(2)(iii).

47.    The TSR also prohibits sellers and telemarketers from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies.  16 C.F.R. § 310.3(a)(2)(iv).

48.    Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(u).

49.    The TSR requires telemarketers in an outbound telephone call to disclose truthfully, promptly, and in a clear and conspicuous manner the following, among other things:

      a.    The identity of the seller; and

      b.    The nature of the goods or services.

16 C.F.R. § 310.4(d)(1) and (3).

50.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

### Misrepresenting Material Information

51.     In numerous instances, in the course of telemarketing a medical discount plan,

Defendants have misrepresented, directly or by implication, that:

a.      Defendants' plan is a major medical health insurance plan or is the

equivalent of a major medical health insurance plan;

b.      Defendants' plan enables consumers to achieve significant savings on

health care costs; and

c.      Defendants' plan is widely accepted by doctors and other medical

providers throughout the United States.

52.     Defendants' acts and practices, as described in Paragraph 51 above, are deceptive

telemarketing acts or practices that violate the TSR, 16 C.F.R. §§ 310.3(a)(2)(ii) and (a)(2)(iii).

## COUNT III

### Misrepresenting Material Information Regarding the Cancellation Policy

53.     In numerous instances, in the course of telemarketing a medical discount plan,

Defendants have misrepresented, directly or by implication, that consumers may readily cancel

their participation in Defendants' plan at any time.

54.     Defendants' acts and practices, as described in Paragraph 53 above, are deceptive

telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(2)(iv).

## COUNT IV

### Failing to Disclose the "No Refund" Policy

55.     In numerous instances, in the course of telemarketing a medical discount plan,

Defendants fail to disclose truthfully, in a clear and conspicuous manner before consumers pay

for the medical discount plan offered, a statement informing consumers of Defendants' policy of not making refunds.

56.     Defendants' acts and practices, as described in Paragraph 55 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(1)(iii).

## COUNT V

### Failing to Make Required Oral Disclosures

57.     In numerous instances, in the course of telemarketing a medical discount plan, Defendants have made, or have caused a telemarketer to make, outbound telephone calls in which the telemarketer failed to disclose promptly and in a clear and conspicuous manner to the person receiving the call:

    a.      The identity of the seller; or

    b.      The nature of the goods or services.

58.     Defendants' acts and practices, as described in Paragraph 57, are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.4(d).

## CONSUMER INJURY

59.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and TSR. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

60.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations

of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

61.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers or other persons resulting from Defendants' violations of the TSR, including the rescission and reformation of contracts, and the refund of money.

## PRAYER FOR RELIEF

Therefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b; Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b); and the Court's own equitable powers, requests that the Court:

A.     Enter judgment against Defendants and in favor of Plaintiff FTC for each violation alleged in this Complaint;

B.     Award Plaintiff FTC such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access to business premises, the appointment of a receiver, and expedited discovery;

C.     Enter a permanent injunction to prevent future violations of the FTC Act and TSR by Defendants;

D.     Award such relief as the Court finds necessary to redress injury to consumers

resulting from Defendants' violations of the FTC Act and TSR, including, but not limited to,

rescission or reformation of contracts, restitution, the refund of monies paid, and the

disgorgement of ill-gotten monies; and

     E.     Award Plaintiff FTC the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.


                         Respectfully submitted,

                         WILLARD K. TOM
                         General Counsel

                         LEONARD L. GORDON
                         Regional Director
                         Northeast Region


Dated: *August 2, 2010*

                         Carole A. Paynter (cpaynter@ftc.gov)
                         Karen Dahlberg (kdahlberg@ftc.gov)
                         Federal Trade Commission
                         Northeast Region
                         One Bowling Green, Suite 318
                         New York, NY 10004
                         tel: 212-607-2829/fax: 212-607-2822