UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WILLARD K. TOM
General Counsel
LEONARD L. GORDON
Regional Director
Northeast Region

CAROLE A. PAYNTER (cpaynter@ftc.gov)
KAREN DAHLBERG (kdahlberg@ftc.gov)
Federal Trade Commission
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
tel: 212-607-2829/ fax: 212-607-2822

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> -v- <br><br> CONSUMER HEALTH BENEFITS ASSOCIATION, organized as a Missouri not-for-profit, also doing business as CHBA, et al., <br><br> Defendants. | **Case No. 10-cv-03551 (ILG)(RLM)** <br><br><br> **STIPULATED ORDER OF PRELIMINARY INJUNCTION AS TO DEFENDANT LOUIS LEO** |

Plaintiff, the Federal Trade Commission ("FTC" or the "Commission") filed its

Complaint for a permanent injunction and other relief in this matter, pursuant to Section 13(b) of

the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), against Consumer Health

Benefits Association ("CHBA"), National Association for Americans ("NAFA"), National

Benefits Consultants, LLC ("NBC"), National Benefits Solutions, LLC ("NBS") (collectively,

the "Receivership Defendants"), and Louis Leo, Ron Werner, and Rita Werner (collectively, the

"Individual Defendants"), both individually and in their capacities as officers, directors, and/or

controlling persons of the Receivership Defendants (each a "Defendant" and all collectively the "Defendants"). On August 3, 2010, upon the FTC's *ex parte* motion for a temporary restraining order pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court entered the *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointing Temporary Receiver, and Other Equitable Relief ("Temporary Restraining Order"). By agreement of the parties and court order, the Temporary Restraining Order, which was originally set to expire on August 13, 2010, was extended to expire on August 27, 2010 or a later date convenient to the Court, and further extended to expire on September 17, 2010 or a later date convenient to the Court. The FTC and Defendant Louis Leo, individually, as a Managing Member of NBS, as the Vice President and Treasurer of CHBA, and as an officer, director, and/or controlling person of NBC and NAFA ("Defendant Leo"), having discussed the terms of this Stipulated Order for Preliminary Injunction ("Order"), have agreed to the entry of this Order, with the following findings of fact and provisions:

1.    The FTC asserts that this Court has jurisdiction of the subject matter of this case, and there is good cause to believe it will have jurisdiction over Defendant Leo.

2.    The FTC asserts that there is good cause to believe that venue lies properly in this Court.

3.    The FTC asserts that there is good cause to believe Defendant Leo's activities as alleged in the FTC's complaint are in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4.    The FTC asserts that there is good cause to believe that Defendant Leo has engaged in and is likely to engage in acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and that the FTC is therefore likely to prevail on the merits of this action.

5.      The FTC asserts that there is good cause to order an asset freeze on Defendant Leo and re-appoint a Temporary Receiver for the Receivership Defendants, as defined below.

6.      The FTC asserts that weighing the equities and considering the Plaintiff's likelihood of ultimate success in its cause of action, the entry of this Order as set forth below is in the public interest.

7.      No security is required of any agency of the United States for issuance of a preliminary injunction. Fed. R. Civ. P. 65(c).

8.      By this stipulation, Defendant Leo waives his right to a Preliminary Injunction hearing before this Court.

9.      Defendant Leo does not concede that he has violated the law but nevertheless consents to entry of this preliminary injunction.

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1.      **"Asset"** means any legal or equitable interest in, right to, or claim to, any real and personal property including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, premises, mail or other deliveries, shares of stock, lists of consumer names, inventory, checks, notes, accounts, credits, receivables, funds, and all cash, wherever located.

2.      **"Consumer"** means any individual, group, unincorporated association, limited or general partnership, corporation, or other business or non-profit entity.

3.      **"Individual Defendants"** means Louis Leo, individually, as a Managing Member of NBS, as the Vice President and Treasurer of CHBA, and as an officer, director, and/or controlling person of NBC and NAFA, Ron K. Werner, individually, as a Managing

Member of NBC and NBS, as President and Managing Partner of CHBA, and as an officer, director, and/or controlling person of NAFA, and Rita Werner, individually, as Senior Vice President and Director of Operations of CHBA, and as an officer, director, and/or controlling person of NAFA.

4.   **"Defendants"** means the Individual Defendants and the Receivership Defendants as defined below, individually, collectively, or in any combination.

5.   **"Material"** means likely to affect a person's choice of, or conduct regarding, goods or services.

6.   **"Medical Discount Plan"** means any program, plan, product, or service, that is represented to, or does in fact, assist consumers in obtaining access to or paying for any healthcare-related services and products.

7.   **"Major Medical Health Insurance"** means an arrangement between an insurance company and a consumer in which the insurance company agrees to pay a substantial portion of the healthcare expenses that the consumer might incur, in exchange for payment from the consumer.

8.   **"Express Verifiable Authorization"** means:

    a.   the consumer's express written or digital authorization to purchase the product or service that is the subject of the transaction and the consumer's authorization to assess a charge against a specified account for payment. Such authorization must include the consumer's signature (the term "signature" includes a verifiable electronic or digital form of signature, to the extent such form of signature is recognized as a valid signature under applicable federal law or state contract law); or

b.  The consumer's express oral authorization to purchase the product or service that is the subject of the transaction and the consumer's authorization to assess a charge against a specified account for payment that is audio-recorded, as follows:

(i)  The recording must evidence that the consumer, during that transaction, at a minimum, has provided the last four (4) digits of the account number to be charged;

(ii)  The recording must include the entirety of the transaction;

(iii)  The recording can be identified and located by either the consumer's name or telephone number; and

(iv)  A copy of the recording must be provided upon request to the consumer, the consumer's bank, credit or debit card company or other billing entity, state attorney general or consumer protection agency, and the Commission.

9.  **"Document"** or **"documents"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term "document."

10.  **"Financial institution"** means any bank, savings and loan institution, credit union, financial depository, brokerage house, broker-dealer, commodity trading company, precious metal dealer, escrow agent, money market or mutual fund, storage company, trustee or any other person, partnership, corporation, or other legal entity maintaining or having control of any records, accounts or other assets, owned directly or indirectly, of

record or beneficially, by any Defendant, including accounts or assets which any Defendant may control by virtue of being a signatory on said accounts.

11.   **"Person"** or **"persons"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

12.   **"Plaintiff"** means the Federal Trade Commission.

13.   **"Receiver"** shall mean the Temporary Receiver re-appointed in Section XV of this Order.

14.   **"Receivership Defendants"** means CHBA, NAFA, NBC, and NBS, and their successors and assigns, and each of them by whatever names they might be known.

15.   **"Telemarketing"** means the advertising, offering for sale, or sale of any good or service by use of one or more telephones, either exclusively or in conjunction with the use of other marketing techniques.

16.   The terms **"and"** and **"or"** shall be construed conjunctively or disjunctively as necessary, and to make the applicable phrase or sentence inclusive rather than exclusive.

## CONDUCT PROHIBITIONS

## I.

**IT IS HEREBY ORDERED** that:

A. In connection with the advertising, promotion, offering for sale, sale or provision of any goods or services, including, but not limited to, offers for sale of any Medical Discount Plan, Defendant Leo, and his successors, assigns, officers, agents, employees, and corporations, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, including, but not limited to, fictitious business

names, are hereby restrained and enjoined from making or assisting in the making of, expressly or by implication, orally or in writing, any false or misleading statement or representation of material fact, including, but not limited to:

1. That Defendants' medical discount plan is a major medical health insurance plan or is the equivalent of a major medical health insurance plan;

2. That Defendants' medical discount plan enables consumers to achieve significant savings on health care costs;

3. That Defendants' medical discount plan is widely accepted by doctors and other medical providers throughout the United States; and

4. That consumers may readily cancel their participation in Defendants' medical discount plan at anytime.

B. Defendant Leo, and his successors, assigns, officers, agents, employees, and corporations, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, including, but not limited to, fictitious business names, are hereby restrained and enjoined from violating or assisting others in violating any provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310, in the course of offering for sale or selling any goods or services through telemarketing, including, but not limited to, any medical discount plan.

C. Defendant Leo, and his successors, assigns, officers, agents, employees, and corporations, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, including, but not limited to, fictitious business names, are hereby restrained and enjoined from charging, or causing to be

charged, any consumer's credit card, or debiting, or causing to be debited, any consumer's bank account without the consumer's Express Verifiable Authorization for such charge or debit to be made.

D.  Defendant Leo, and his successors, assigns, officers, agents, employees, and corporations, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, including, but not limited to, fictitious business names, are hereby restrained and enjoined from interfering, or causing another to interfere, with any consumer's attempt to cancel enrollment or membership in any plan or program that charges recurring fees for enrollment or membership.

E.  Defendant Leo, and his successors, assigns, officers, agents, employees, and corporations, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, including, but not limited to, fictitious business names, are hereby restrained and enjoined from interfering, or causing another to interfere, with any consumer's attempt to cease the imposition of recurring charges to a credit card or debits to a bank account, including, but not limited to, any consumer's attempt to cease the imposition of recurring charges or debits in connection with any medical discount plan.

**ASSET FREEZE**

**II.**

**IT IS FURTHER ORDERED** that Defendant Leo, and his successors, assigns, officers, agents, employees, and corporations, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether

acting directly or through any trust, corporation, subsidiary, division, or other device, including, but not limited to, fictitious business names, are hereby restrained and enjoined from:

A.  Transferring, liquidating, converting, encumbering, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, pledging, loaning, granting a lien or security interest or other interest in, or otherwise disposing of any funds, credit instruments, real or personal property, accounts, contracts, lists of consumer names, shares of stock, or other assets, wherever located, including outside the United States, other than to make transfers to any Temporary Receiver appointed herein, that are:

1.  Owned or controlled by Defendant Leo, in whole or in part, including, but not limited to, any assets held by, for, or in the name of Defendant Leo at any bank or savings and loan institution or credit card processing agent, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, merchant account processor, check processor, or other financial institution, depository of any kind, or business entity, including, but not limited to, accounts held at Bank of America.

2.  In the actual or constructive possession of Defendant Leo;

3.  Held by any agent of Defendant Leo as a retainer for the agent's provision of services to Defendant Leo; or

4.  Owned, controlled by, or in the actual or constructive possession of any corporation, partnership, limited liability company, or other entity directly or indirectly owned, managed, or controlled by or under common control with Defendant Leo.

B.  Opening or causing to be opened any safe deposit boxes, titled, singly or jointly, in the name of Defendant Leo, or subject to access by Defendant Leo.

C.  Cashing any checks or depositing any payments received from customers of the
Defendants.

D.  Incurring charges on any credit card issued in the name, singly or jointly, of any
Defendant.

E.  Collecting, opening, or causing to be collected or opened, any mail, received by or on
behalf of the Receivership Defendants, at any address, including, but not limited to, the
following: 4875 Coconut Creek Parkway, Coconut Creek, Florida 33063, and 1111 SW 21st
Avenue, Suite 24, Fort Lauderdale, Florida 33312, and failing to turn over any such mail to the
Temporary Receiver.

F.  Obtaining a personal or secured loan.

G.  Incurring liens or other encumbrances on real property, personal property or other assets
of any Defendant in the name of any Defendant, singly or jointly.

H.  The assets affected by this Section shall include all existing assets as of August 25, 2010.

Notwithstanding the provisions of this Section, Defendant Leo may make transfers as
directed by the Temporary Receiver appointed by this Court, or as otherwise ordered by this
Court upon proper showing and after notice to counsel for the FTC.

## CUSTOMER LISTS

## III.

**IT IS FURTHER ORDERED** that Defendant Leo, and his successors, assigns, officers,
agents, employees, and corporations, and those persons in active concert or participation with
any of them who receive actual notice of this Order by personal service or otherwise, whether
acting directly or through any trust, corporation, subsidiary, division, or other device, including,
but not limited to, fictitious business names, are hereby restrained and enjoined from selling,

renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, social security number, credit card number, debit card number, bank account number, e-mail address, or other identifying information of any person who paid any money to any Defendant, at any time prior to entry of this Order, in connection with the telemarketing, advertising, promoting, offering for sale, and selling of any medical discount plan. Provided, however, that Defendant Leo may disclose such identifying information to a law enforcement agency or as required by any law, regulation, or Court order. Defendant Leo is also hereby restrained and enjoined from making any use of such identifying information in any business, whether or not related to the present action.

**WEBPAGES/WEBSITES**

**IV.**

**IT IS FURTHER ORDERED** that, in connection with the advertising, promotion, offering for sale, sale or provision of any goods or services, including, but not limited to, offers for sale of any Medical Discount Plan, Defendant Leo, and his successors, assigns, officers, agents, employees, and corporations, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, including, but not limited to, fictitious business names, are hereby restrained and enjoined from:

A. Owning, operating, managing, or editing a Medical Discount Plan webpage or website;

B. Inserting any type of code or command in any webpage or on any website that automatically redirects a consumer to any other webpage or website;

C. Advertising or promoting a Medical Discount Plan on any webpage or website;

D. Misrepresenting the contents of their webpages or websites through the use of meta tags,

or by any other means;

E. Overriding the normal functioning of a consumer's Internet browser; and

F. In connection with the advertising, promotion, offering for sale, sale or provision of any Medical Discount Plan or any goods or services that are marketed by telemarketing, registering any new domain names, either directly or through any third party, without notifying counsel for the FTC within 24 hours of such action. Such notice shall include the true identity of the domain name registrant, his or her mailing address, e-mail address, and telephone number.

## WEB HOSTING

## V.

**IT IS FURTHER ORDERED** that, pending final resolution of this matter, any party hosting any webpages or websites for Defendant Leo, or his successors, assigns, officers, agents, employees, and corporations, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, including, but not limited to, fictitious business names, shall:

A. Immediately take whatever steps may be necessary to ensure that the websites or webpages operated under the name www.getnbs.com and websites or webpages operated or controlled in whole or in part by Defendant Leo that contain representations that violate Section I of this Order cannot be accessed by the public;

B. Prevent the destruction or erasure of websites or webpages operated under the name www.getnbs.com and websites or webpages operated or controlled in whole or in part by Defendant Leo that contain representations that violate Section I of this Order, by preserving

such websites or webpages in the format in which they are currently maintained; and

C. Immediately notify FTC counsel of all websites or webpages operated or controlled in whole or in part by Defendant Leo that advertise, promote, offer for sale, sell or provide any Medical Discount Plan or any goods or services that are marketed by telemarketing.

### RETENTION OF ASSETS AND RECORDS HELD BY THIRD PARTIES

### VI.

**IT IS FURTHER ORDERED** that any financial or brokerage institution, business entity, or person served with a copy of this Order, that holds, controls or maintains custody of any account or asset of Defendant Leo or any corporation, partnership, or other entity directly or indirectly owned, managed, controlled by, or under common control with Defendant Leo, which is served with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

A. Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of any of the assets, funds, documents, or other property held by, or under its control:

    1. On behalf of, or for the benefit of, Defendant Leo or any other person subject to Section II of this Order;

    2. In any account maintained in the name of, for the benefit of, or subject to withdrawal by, Defendant Leo or any other person subject to Section II of this Order; and

    3. That are subject to access or use by, or under the signatory power of, Defendant Leo or any other person subject to Section II of this Order.

B. Deny Defendant Leo access to any safety deposit box, that is:

    1. Titled in the name of Defendant Leo, either individually or jointly; or

2. Otherwise subject to access by Defendant Leo, either individually or jointly;

C. Provide counsel for the FTC and the Temporary Receiver, if they have not done so already, within five (5) business days of receiving a copy of this Order, a sworn statement setting forth:

1. The identification number and description of each such account or asset titled in the name, individually or jointly, of Defendant Leo, or held on behalf of, or for the benefit of, Defendant Leo;

2. The balance of each such account, or a description of the nature and value of such asset, as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

3. The identification of any safe deposit box that is either titled in the name, individually or jointly, of Defendant Leo, or otherwise subject to access by Defendant Leo; and

D. Upon the request of the Temporary Receiver or the FTC, provide the Temporary Receiver and the FTC within forty-eight (48) hours with copies of all records or other documentation pertaining to any account or asset of Defendant Leo, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

E. Cooperate with all requests of the Temporary Receiver relating to implementation of this Order, including transferring funds or other assets at the Temporary Receiver's direction and producing records related to the accounts or assets of Defendant Leo.

## REPATRIATION OF ASSETS AND DOCUMENTS LOCATED
## IN FOREIGN COUNTRIES

## VII.

**IT IS FURTHER ORDERED** that Defendant Leo shall:

A.  If he has not done so already, within three (3) days following the service of this Order, take such steps as are necessary to transfer to the territory of the United States of America all documents and assets that are located outside of such territory and are held by or for the benefit of Defendant Leo or are under his direct or indirect control, jointly, severally, or individually;

B.  If he has not done so already, within three (3) days following the service of this Order, provide counsel for the FTC and the Temporary Receiver with a full accounting of all documents and assets that are located outside of such territory and are held by or for the benefit of Defendant Leo or are under his direct or indirect control, whether jointly, severally, or individually;

C.  Hold and retain all documents and assets transferred pursuant to Subsection A and prevent any transfer, disposition, or dissipation whatsoever of any such assets or funds; and

D.  Provide counsel for the FTC with access to records and documents of Defendant Leo held by financial institutions outside the territorial United States of America, by signing and delivering to Plaintiff the Consent to Release of Financial Records attached hereto as Attachment A within forty-eight (48) hours of service of this Order, if he has not done so already.

## INTERFERENCE WITH REPATRIATION

## VIII.

**IT IS FURTHER ORDERED** that Defendant Leo is hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of

Defendant Leo's foreign assets or in the hindrance of the repatriation required by Section VII of this Order, including, but not limited to:

A. Sending any statement, letter, facsimile, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to Section VII of this Order; and

B. Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Section VII of this Order.

## EXPEDITED DISCOVERY

## IX.

**IT IS FURTHER ORDERED** that the FTC and the Temporary Receiver are granted leave to conduct certain expedited discovery, and that, commencing with the time and date of this Order, in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, expedited discovery shall proceed as follows:

Pursuant to Fed. R. Civ. P. 30, the FTC may take depositions upon oral examination concerning the nature, location, status, and extent of the Defendants' assets; the status and location of documents reflecting the Defendants' business transactions; and compliance with this Order, on two (2) days' notice of any such deposition. Depositions may be taken Monday through Saturday.

*Provided*, that this Section permitting expedited deposition discovery concerning the nature,

location, status, and extent of the Defendants' assets, the status and location of documents reflecting the Defendants' business transactions, and compliance with this Order, shall not be construed in any manner to preclude Plaintiff's right to take subsequent depositions of the same witnesses on the merits of this action.

*Provided, further*, that any deposition taken pursuant to this Section is in addition to, and not subject to, the presumptive limits on depositions set forth in Fed. R. Civ. P. 30(a)(2)(A).

Pursuant to Fed. R. Civ. P. 34(b), Defendant Leo shall produce all documents requested by the FTC within two (2) days of service of such request, with production of documents made to FTC counsel or to such other person or place as counsel for the FTC may direct in writing.

*Provided*, that, in the event any of the Defendants' documents have been removed from the Defendants' premises by and are in the possession of another law enforcement or investigative agency, the FTC shall have immediate access to such documents for purposes of inspection, indexing, and copying, subject to the agency consenting to access by the FTC.

*Provided, further*, that this Section shall extend to parties and non-parties.

## CREDIT REPORTS

## X.

**IT IS FURTHER ORDERED** that the FTC may obtain credit reports concerning Defendant Leo pursuant to Section 604(a)(I) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that upon written request, any credit reporting agency from which such report is requested shall provide it to the FTC.

## FINANCIAL REPORTS

## XI.

**IT IS FURTHER ORDERED** that Defendant Leo, if he has not done so already, within

three (3) business days of receiving service of this Order, shall prepare and deliver to the Temporary Receiver and to counsel for the FTC:

A. Completed financial statements on the forms attached to this Order as Attachments B and C, for Defendant Leo and the Receivership Defendants, respectively, and for each business entity (whether or not incorporated) under which he conducts any business, or of which Defendant Leo is an owner or officer, and for each trust of which Defendant Leo is a trustee. The financial statements shall be accurate as of the date of entry of this Order; and

B. All current accountants' reports; all federal tax returns filed since January 1, 2007; documents indicating title to real or personal property; and other indicia of ownership that are now in Defendant Leo's actual or constructive possession.

The FTC acknowledges that Defendant Leo has provided a sworn Individual Financial Statement, which was sworn to on August 16, 2010.

## IDENTIFYING INFORMATION RELATING TO ACCOUNTANTS, FINANCIAL PLANNERS, INVESTMENT ADVISORS, STOCK BROKERS AND OTHERS

## XII.

**IT IS FURTHER ORDERED** that Defendant Leo, if he has not done so already, within three (3) business days of receiving service of this Order, shall provide counsel for the FTC and the Temporary Receiver: (1) the name, address and telephone number for each accountant, financial planner, investment advisor, stock broker or other individual, corporation or partnership whom he hired for personal advice or services, including, but not limited to, preparation of tax returns and investment advice, since January 1, 2007, and (2) the name, address and telephone number for each accountant, financial planner, investment advisor, stockbroker or other individual, corporation or partnership who was hired on behalf of Defendant

Leo since January 1, 2007.

## RECORD KEEPING/BUSINESS OPERATIONS

## XIII.

**IT IS FURTHER ORDERED** that Defendant Leo, and his successors, assigns, officers, agents, employees, and corporations, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, including, but not limited to, fictitious business names, are hereby restrained and enjoined from:

A. Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect Defendant Leo's incomes, disbursements, transactions, and use of money;

B. Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any contracts, accounting data, correspondence, advertisements, computer tapes, discs, or other computerized records, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, and other documents or records of any kind that relate to the business practices or business or personal finances of Defendant Leo; and

C. Creating, operating, or exercising any control over any business entity that advertises, promotes, offers for sale, sells or provides any Medical Discount Plan or any goods or services that are marketed by telemarketing, including any partnership, limited partnership, joint venture, sole proprietorship, limited liability company, or corporation, without first providing counsel for the FTC with a written statement disclosing:

(1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers and employees; and (4) a detailed description of the business entity's intended activities.

## DISTRIBUTION OF ORDER BY DEFENDANT LEO

## XIV.

**IT IS FURTHER ORDERED** that Defendant Leo shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, agent, attorney, and representative of Defendant Leo in connection with the advertising, promotion, offering for sale, sale or provision of any Medical Discount Plan or any goods or services that are marketed by telemarketing, and shall, within five (5) calendar days from the date of entry of this Order, provide counsel for the FTC and the Temporary Receiver with a sworn statement that Defendant Leo has complied with this provision of the Order, which statement shall include the names and addresses of each such person or entity who received a copy of the Order. The Temporary Receiver has no obligation under this Section.

## RE-APPOINTMENT OF TEMPORARY RECEIVER

## XV.

**IT IS FURTHER ORDERED** that Angela Tese-Milner, whose address is 1 Minetta Lane, New York, New York 10012, is re-appointed Temporary Receiver for the Receivership Defendants, with the full power of an equity receiver for the Receivership Defendants, and all of the funds, properties, premises, accounts, and other assets directly owned by the Receivership Defendants. The Temporary Receiver shall be solely the agent of this Court in acting as Temporary Receiver under this Order. The Temporary Receiver shall be accountable directly to

this Court. The Temporary Receiver shall comply with all Local Rules of this Court governing receivers. This re-appointment shall expire according to the provisions of Sections XXIII and XXIV of this Order.

## RECEIVERSHIP DUTIES AND AUTHORITY

## XVI.

**IT IS FURTHER ORDERED** that the Temporary Receiver is directed and authorized to accomplish the following:

A. Assume full control of the Receivership Defendants by removing, as the Temporary Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of the Receivership Defendants, including any individual, from control of, management of, or participation in, the affairs of the business of the Receivership Defendants and manage and administer the business of the Receivership Defendants until such further Order of this Court by performing all incidental acts that the Temporary Receiver deems to be advisable or necessary, which includes retaining or hiring any employees, independent contractors or agents;

B. Collect, marshal, and take exclusive custody, control and possession of all funds, property, books and records, accounts, mail, and other assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated, including, but not limited to: 4875 Coconut Creek Parkway, Coconut Creek FL 33063-3944. The Temporary Receiver's authority to collect any and all mail relating to the affairs of the Receivership Defendants in the possession, custody, or under the control of Defendant Leo shall extend to mail in the possession of any third parties. The Temporary Receiver shall have full power to change mailing addresses of the Receivership Defendants. The Temporary Receiver shall have full power to change any locks on any real or personal property of the Receivership

Defendants. The Temporary Receiver shall have full power to divert mail, sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information, and other papers and documents of the Receivership Defendants, including documents related to customers or clients whose interests are now held by or under the direction, possession, custody or control of the Receivership Defendants or under the control of any third party for the benefit of the Receivership Defendants. The Temporary Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Defendants.

*Provided, however,* the Temporary Receiver shall not attempt to collect any amount from a consumer if the Temporary Receiver believes the consumer was a victim of the unfair acts or practices alleged in the Complaint in this matter, without prior Court approval;

C. Take all steps necessary to secure the business premises of the Receivership Defendants, including, but not limited to, all such premises located at 4875 Coconut Creek Parkway, Coconut Creek FL 33063-3944. Such steps may include, but are not limited to, the following, as the Temporary Receiver deems necessary or advisable: (1) serving and filing this Order; (2) completing a written inventory of all Receivership assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) photographing or videotaping all portions of the Receivership Defendants' business premises; (5) securing the Receivership Defendants' business premises by changing the locks on any real or personal property of the Receivership Defendants; (6) disconnecting any computer modems or

other means of access to the computer or other records maintained at the Receivership

Defendants' business premises; (7) requiring any persons present on the Receivership

Defendants' business premises at the time this Order is served to vacate the premises, to provide

the Temporary Receiver with proof of identification, or to demonstrate to the satisfaction of the

Temporary Receiver that such persons are not removing from the premises documents or assets

of the Defendants.  Law enforcement personnel, including, but not limited to, local police or

sheriffs, may assist the Temporary Receiver in implementing these provisions in order to keep

the peace and maintain security;

D.  To immediately return to consumers, without further court order, any funds that are

identifiable as received from specific consumers following the Temporary Receiver's

appointment or that are received at the Receivership Defendants' premises or mailboxes or

forwarded to the Temporary Receiver after entry of this Order and that were, based upon the

Temporary Receiver's good faith determination, procured by use of the unfair acts or practices

alleged in the Complaint in this matter.  Likewise, upon the Temporary Receiver's appointment,

the Temporary Receiver shall take all reasonable steps to halt immediately the collection of

enrollment fees from being promised from the bank or credit card accounts of new purchasers of

the Medical Discount Plan, that in the Temporary Receiver's good faith determination were

procured by use of the unfair acts or practices alleged in the Complaint in this matter.

E.  Conserve, hold, and manage all Receivership assets, and perform all acts necessary or

advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage,

or injury to consumers or to creditors of the Receivership Defendants, including, but not limited

to, obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication

of assets;

F. Enter into contracts and purchase insurance as advisable or necessary, including, but not limited to, (1) the retention and employment of investigators, attorneys or accountants of the Temporary Receiver's choice, including, but not limited to, members and employees of the Temporary Receiver's firm, to assist, advise and represent the Temporary Receiver, and (2) the movement and storage of any equipment, furniture, records, files, or other physical property of the Receivership Defendants;

G. Prevent the inequitable distribution of the Receivership assets, and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

H. Have the sole legal authority to hire legal counsel on behalf of the Receivership Defendants, *provided however,* that nothing in this Order shall require the Temporary Receiver to defend the Receivership Defendants in any action prosecuted by a state Attorney General;

I. Make payments and disbursements from the Receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Temporary Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by any Receivership Defendant prior to the date of entry of this Order, except payments that the Temporary Receiver deems necessary or advisable to secure assets of such Receivership Defendant, such as rental payments;

J. Institute, prosecute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Temporary Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this Order;

K. Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Temporary Receiver in her role as Temporary Receiver, or against the Receivership Defendants that the Temporary Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this Order;

L. Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Temporary Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided that the continuation and conduct of the business shall be conditioned upon the Temporary Receiver's good faith determination that the business can be lawfully operated at a profit using the assets of the Receivership estate;

M. Issue subpoenas to obtain documents and records pertaining to the Receivership Defendants, and conduct discovery in this action on behalf of the Receivership estate;

N. Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Temporary Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the Receivership estate from such an account;

O. Maintain accurate records of all receipts and expenditures that she makes as Temporary Receiver;

P. Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency;

Q. Maintain the chain of custody of all of Defendants' records in her possession, pursuant to

procedures to be established by the Temporary Receiver in writing with the approval of the FTC; and

R. Prepare and submit a Report to this Court and to the parties, not less than three (3) days prior to the scheduled Preliminary Injunction Hearing, describing the Temporary Receiver's activities in connection with carrying out the Temporary Receiver's obligations and responsibilities under the Order, the Receivership Defendants' business activities, sales volume, and/or number of purchasers, and assets and liabilities, to the extent such information is known to or has been provided to the Temporary Receiver, and any other information the Temporary Receiver believes is relevant to the Court.

## COOPERATION WITH THE TEMPORARY RECEIVER

### XVII.

**IT IS FURTHER ORDERED** that Defendant Leo, and his successors, assigns, officers, agents, employees, and corporations, and those persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, including, but not limited to, fictitious business names, shall fully cooperate with and assist the Temporary Receiver. Defendant Leo's cooperation and assistance shall include, but not be limited to, providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority and discharging the responsibilities of the Temporary Receiver under this Order; providing any password or entry code required to access any computer or electronic files of the Receivership Defendants in any medium; or advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Temporary Receiver. Defendant Leo is hereby restrained and enjoined from directly or

indirectly:

A. Transacting any of the business of the Receivership Defendants;

B. Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants, including, but not limited to, books, records, accounts, or any other papers of any kind or nature;

C. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants or the Temporary Receiver;

D. Excusing debts owed to the Receivership Defendants;

E. Failing to notify the Temporary Receiver of any asset, including accounts, of the Receivership Defendants held in any name other than the name of any Receivership Defendant, or by any person or entity other than such Receivership Defendant, or failing to provide any assistance or information requested by the Temporary Receiver in connection with obtaining possession, custody, or control of such assets; or

F. Doing any act or refraining from any act whatsoever to interfere with the Temporary Receiver taking custody, control, possession, or management of the Receivership Defendants' assets or documents; or to harass or interfere with the Temporary Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants; or to refuse to cooperate with the Temporary Receiver or the Temporary Receiver's duly authorized agents in the exercise of their duties or authority under this Order.

## DELIVERY OF RECEIVERSHIP PROPERTY

## XVIII.

**IT IS FURTHER ORDERED** that immediately upon service of this Order upon him, or within a period permitted by the Temporary Receiver, Defendant Leo and any other person or entity served with a copy of this Order shall forthwith or within such time as permitted by the Temporary Receiver in writing, transfer or deliver possession, custody, and control of the following to the Temporary Receiver:

A.  All assets and property, owned beneficially or otherwise, wherever situated, of the Receivership Defendants (including, but not limited to, desktop and laptop computers and network servers);

B.  All documents of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

C.  All assets belonging to members of the public now held by the Receivership Defendants;

D.  All keys, codes, computer passwords, entry codes and combinations to locks necessary to gain or to secure access to any assets or documents of the Receivership Defendants, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property;

E.  Information identifying the accounts, employees, properties or other assets or obligations of the Receivership Defendants.

In the event Defendant Leo fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Section, the Temporary Receiver may file an Affidavit of Non-

Compliance regarding such failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Temporary Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county or any other federal or state law enforcement officer, pursuant to Federal Rule of Civil Procedure 4(c)(2), to seize the asset, document, or other thing, and to deliver it to the Temporary Receiver.

## BANKRUPTCY PETITIONS

## XIX.

**IT IS FURTHER ORDERED** that, in light of the asset freeze and re-appointment of the Temporary Receiver, Defendant Leo and the Receivership Defendants, and each of them, are hereby prohibited from filing, or causing to be filed, on behalf of any Receivership Defendant, a petition for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* without prior permission from this Court.

## TRANSFER OF FUNDS TO THE TEMPORARY RECEIVER

## XX.

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, or other financial institutions shall cooperate with all reasonable requests of the Temporary Receiver relating to the implementation of this Order including transferring funds at her direction and producing records related to the assets of the Receivership Defendants.

## STAY OF ACTIONS

## XXI.

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of

the Receivership ordered herein, Defendant Leo, and all vendors, principals, investors, creditors, stockholders, lessors, and all other persons and entities seeking to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, Defendant Leo or any Receivership Defendant, and all others acting for or on behalf of such persons, including, but not limited to, attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective attorneys, agents and employees, be and are hereby stayed from:

A. Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding against Defendant Leo or any Receivership Defendant, except that such actions may be filed to toll any applicable statute of limitations;

B. Commencing, prosecuting, continuing, or entering any suit or proceeding in the name of or on behalf of Defendant Leo or any Receivership Defendant;

C. Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset of Defendant Leo or any Receivership Defendant; attempting to foreclose, forfeit, alter, or terminate Defendant Leo's or any Receivership Defendant's interest in any asset, including, but not limited to, the establishment, granting, or perfection of any security interest, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

D. Using self-help, executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process, whether specified in this Order or not, for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon, any assets of Defendant Leo or any Receivership Defendant; or

E. Taking any action or doing anything whatsoever to interfere with the Temporary

Receiver taking custody, control, possession, or management of the Receivership Defendants' assets or documents, or to interfere in any way with the Temporary Receiver, or to harass or interfere with the duties of the Temporary Receiver, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of any Receivership Defendant, or its subsidiaries or affiliates.

F.  This Section does not stay:

1.  The commencement or continuation of a criminal action or proceeding;

2.  The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3.  The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power, including execution on any security interest in favor of the FTC;

4.  The commencement of any action by the Secretary of the United States Department of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by the Secretary is insured or was formerly insured under the National Housing Act and covers property, or combinations of property, consisting of five or more living units; or

5.  The issuance to a Defendant of a notice of tax deficiency.

Except as otherwise provided in this Order, all persons and entities in need of documentation from the Temporary Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Temporary Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Temporary Receiver, any such person or entity may thereafter seek an Order of this Court with regard to the relief requested.

## COMPENSATION OF TEMPORARY RECEIVER

### XXII.

**IT IS FURTHER ORDERED** that the Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, or in the possession or control of, or which may be received by the Defendants. Said fees and out-of-pocket expenses shall be paid prior to any monetary relief that may be awarded by this Court to consumers who paid any fees to Defendants in connection with any Medical Discount Plan. The Temporary Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, which shall exclude the costs of filing and service, with the first such request filed no more than sixty (60) days after the date of this Order. The Temporary Receiver shall not increase the hourly rates used as the basis for such fee applications without prior approval of the Court and without prior notice to counsel for the FTC.

## WITHDRAWAL OF TEMPORARY RECEIVER

### XXIII.

**IT IS FURTHER ORDERED** that the Temporary Receiver and any professional retained by the Temporary Receiver, including, but not limited to, her attorneys and accountants, be and are hereby authorized to withdraw from their respective appointments or representations at any time after the date of this Order, for any reason in their sole and absolute discretion, by sending written notice seven (7) days prior to the date the Temporary Receiver intends to withdraw to the Court and to the parties; and such Temporary Receiver and professionals shall be relieved of all

liabilities and responsibilities seven (7) days from the date of such notice or withdrawal. The written notice shall include an interim report indicating the Temporary Receiver's actions and reflect her knowledge gained. The report shall also contain the Temporary Receiver's recommendations, if any.

## TERMINATION OF RECEIVERSHIP

### XXIV.

**IT IS FURTHER ORDERED** that the Receivership created under this Order shall expire 180 days from the date of the entry of this Order, unless the FTC moves the Court to shorten or extend the Receivership. The Temporary Receiver shall file with the court and serve upon the parties a final report no later than seven (7) days prior to the dissolution of the Receivership.

## USE OF ALIASES

### XXV.

**IT IS FURTHER ORDERED** that Defendant Leo is hereby enjoined from using any fictitious, false, or assumed title or name, other than his own proper name, or otherwise misrepresenting his true identity in the course of business dealings or in publicly filed documents.

## RETENTION OF JURISDICTION

### XXVI.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all purposes.

**STIPULATED AND AGREED TO:**

For the Plaintiff:

Carole A. Paynter (cpaynter@ftc.gov)
Karen Dahlberg (kdahlberg@ftc.gov)
**FEDERAL TRADE COMMISSION**
Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829 (tel)
(212) 607-2822 (fax)

For Defendant Leo:

Louis Leo, *pro se*
7485 Ridgefield Lane
Lake Worth, FL 33467

SO ORDERED, this 21st day of September, 2010, at 3:15 p.m.

s/I. Leo Glasser

Hon. I. Leo Glasser, U.S.D.J.