UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FEDERAL TRADE COMMISSION,

                      Plaintiff,                           **MEMORANDUM AND ORDER**

            -against-                               10-CV-3551 (ILG)

CONSUMER HEALTH BENEFITS
ASSOCIATION, et al.,

                      Defendants.
------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Currently pending before this Court is an application by plaintiff Federal Trade

Commission ("FTC") to amend the original complaint in this action to add a series of new

corporate and individual defendants (hereinafter "Proposed Defendants"). The Proposed

Defendants oppose the application on two grounds: that the amendment is futile and unduly

prejudicial. For the reasons that follow, the objections of the Proposed Defendants are

overruled, and the FTC's request to amend is granted.[1]

## FACTUAL BACKGROUND

      The FTC filed this action on August 3, 2010, against the following entities

(collectively, "Corporate Defendants"): Consumer Health Benefits Association ("CHBA"),

National Association for Americans ("NAFA"), National Benefit Consultants, LLC ("NBC"),

National Benefits Solutions, LLC ("NBS"); and against the following individuals (collectively,

"Individual Defendants"): Ron Werner, individually and as a Managing Member of CHBA,

---

[1] A motion to amend is a non-dispositive motion that may be decided by a magistrate judge. See Sanrio Co. v. Epic Trading, Inc., No. 2004-5428 (NG/MDG), 2005 WL 1705746, at *1 n. 1 (E.D.N.Y. July 21, 2005) (collecting cases).

NBC and NBS, and Rita Werner, individually and as a Senior Vice President and Director of Operations at CHBA ("the Werners"); and Louis Leo ("Leo"), individually and as a Managing Member of CHBA, NBC and NBS (all original defendants collectively, "Original Defendants"). See Complaint (Aug. 3, 2010) ("Compl."), Electronic Case Filing ("ECF") Docket Entry ("D.E.") #1. The original complaint alleges that the Corporate Defendants "marketed, distributed or sold a medical discount plan to consumers" throughout the United States, and that the Individual Defendants "formulated, directed, controlled, had the authority to control, or participated in the acts and practices" alleged in the complaint. Id. ¶¶ 5-11. In essence, the FTC alleges that the Corporate Defendants operated a common enterprise involving deceptive marketing of a medical discount plan (the "Plan") in violation of Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 25 U.S.C. §§ 6101-6108. See Compl. ¶¶ 1, 13.

After various fits and starts in the litigation,[2] the FTC wrote to the Court on May 6, 2011, seeking leave to file a motion to amend its complaint. See Letter from FTC to the Court (May 6, 2011) ("5/6/11 FTC Letter"), D.E. #167. The FTC claims that "[e]vidence the FTC uncovered since it filed the complaint reveals that the common enterprise that perpetrated this deception is broader than the already-named defendants, and that [the following] additional parties are also responsible," FTC Memorandum of Points and Authorities in Support of its Motion to Amend (June 20, 2011) ("FTC Mem.") at 1, D.E. #204:

_____

[2] See infra pp. 6-7.

- Guarantee Trust Life Insurance Co. ("GTLI")
- Vantage America Solutions, Inc. ("VAS"), a wholly owned subsidiary of GTLI
- Century Senior Services ("CSS"), 90-percent owned by a wholly-owned subsidiary of GTLI (the four aforesaid entities collectively, "Proposed Corporate Defendants")
- Jeffrey Burman ("Burman"), President of VAS and Vice President of GTLI
- Richard Holson, III ("Holson"), Chairman of the Board, President and C.E.O. of GTLI
- Barbara Taube ("Taube"), Senior Vice President of Finance and C.F.O. of GTLI (GTLI, Holson and Taube collectively, "GTLI Defendants")
- John Schwartz ("Schwartz"), member of NBC and NBS
- Wendi Tow ("Tow"), member of NBC and NBS (Holson, Taube, Schwartz and Tow collectively, "Proposed Individual Defendants")

See 5/6/11 FTC Letter at 1.

None of the Original Defendants has opposed the FTC's motion to amend, see 5/6/11 FTC Letter at 1-2,[3] but the Proposed Corporate Defendants submitted a letter objecting to the FTC's request. See Letter in re: Objections to Motion to Amend (May 12, 2011), D.E. #171. At the Court's direction, see Order (May 16, 2011), D.E. #178, the FTC served and filed a copy of the proposed amended Complaint, see Proposed First Amended Complaint (May 18, 2011) ("PAC"), D.E. #182, and the Court set a briefing schedule. See Order re: PAC (June 9, 2011) ("6/9/11 Order"), D.E. #195; see also Order (June 10, 2011), D.E. #198 (granting motion for extension); Order (July 1, 2011) ("7/1/11 Order"), D.E. #215 (same).

Thereafter, the FTC formally moved to amend the complaint, see Motion to Amend

---

[3] Defendant Leo "has stated that he will not oppose the motion for leave to amend, but also will not consent to it." 5/6/11 FTC Letter at 1-2. The Corporate Defendants never responded to the original complaint, and the Werners (who were proceeding *pro se*) did not respond to the FTC's communications concerning the proposed motion. See id. at 2. The Werners, who filed for bankruptcy, retained counsel after this Court ruled that their bankruptcy petitions did not stay the instant action. See Notice of Appearance (June 20, 2011), D.E. #207; Memorandum and Order/Report and Recommendation (June 8, 2011), D.E. #194. Counsel for the Werners has not filed any opposition to the FTC's application.

Complaint (June 20, 2011), D.E. #203; FTC Mem., proffering supporting affidavits with attached exhibits. See Declaration of Karen Dahlberg (Jun 20, 2011), D.E. #205; Declaration of Cindy Kapadia (Jun 20, 2011), D.E. #206. All of the Proposed Defendants then filed submissions in opposition, see Response in Opposition by Corporate Defendants, Holson, Burman and Taube (July 5, 2011) ("Def. Opp."), D.E. #216; Response in Opposition by Schwartz and Tow (July 6, 2011) ("Schwartz/Tow Opp."), D.E. #218,[4] arguing that the FTC's motion is "unduly prejudicial" and "the content . . . is insufficient to state a claim." Def. Opp. at 3; see also Schwartz/Tow Opp. at 2. The FTC responded with its Reply Memorandum in Support of Its Motion to Amend Its Complaint (July 12, 2011) ("FTC Reply"), D.E. #221.

## DISCUSSION

"The decision whether to grant leave to amend is generally governed by Rule 15(a) [of the Federal Rules of Civil Procedure], and is within the sound discretion of the Court." Rissman v. City of New York, No. 01Civ.6284 (SHS)(DF), 2001 WL 1398655, at *1 (S.D.N.Y. Nov. 9, 2001) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Local 802, Associated Musicians v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998) (noting that the trial court has "broad" discretion in ruling on a motion to amend). Rule 15(a)

---

[4] The Schwartz/Tow Opposition, which was submitted weeks after the applicable June 20th deadline, see 6/9/11 Order, largely piggybacks onto the submission of the GTLI Defendants, "adopt[ing] the authorities and arguments set forth" therein. Schwartz/Tow Opp. at 2. The arguments on behalf of Schwartz and Tow are conclusory, simply stating that the timing of the FTC's motion "is unduly prejudicial" and that the PAC fails to state a claim because its allegations as to Schwartz and Tow -- the recitation of which takes up almost half the response -- consist of "labels and conclusions" and are therefore futile. Id. at 3. The Court relies primarily on the GTLI Defendants' submission in evaluating the PAC.

instructs courts to "freely grant[]" leave to amend "when justice so requires." <u>Baergas v. City of New York</u>, No. 04CIV2944(BSJ)(HBP), 2005 WL 2105550, at *7 (S.D.N.Y. Sept. 1, 2005) (collecting cases). "Where the proposed amendment seeks to add new defendants, however, Rule 21 governs. Under Rule 21, a party may be added to an action 'at any stage of the action and on such terms as are just.'" <u>Rissman</u>, 2001 WL 1398655, at *1 (citing Fed. R. Civ. P. 21) (additional internal citations omitted). "In deciding whether to allow joinder, the Court is guided by the same standard of liberality afforded to motions to amend pleadings under Rule 15." <u>Id.</u> (citing <u>Clarke v. Fonix Corp.</u>, 98 Civ. 6116(RPP), 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999), <u>aff'd</u>, 199 F.3d 1321 (2d Cir. 1999)).

As a corollary of these principles, a court should deny leave to amend only "if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) [would prejudice] the opposing party . . . or (4) would be futile." <u>Lee v. Regal Cruises, Ltd.</u>, 916 F.Supp. 300, 303 (S.D.N.Y. 1996), <u>aff'd</u>, 116 F.3d 465 (2d Cir. 1997) (citing <u>Foman</u>, 371 U.S. at 182). Only two of those factors, discussed below, have been cited by the Proposed Defendants as grounds for denying leave to amend: prejudice and futility.[5]

---

[5] A preliminary issue concerns the FTC's proffer of documents and sworn statements collected during its investigation. The Proposed Defendants contend that in deciding the sufficiency of the proposed pleading, "[t]he Court cannot rely on the documents" -- which were neither attached to nor incorporated by reference into the PAC -- "to remedy pleading deficiencies." Def. Opp. at 7 (citing <u>Friedl v. City of New York</u>, 210 F.3d 79, 83 (2d Cir. 2000)). In response, the FTC argues that the principle cited by the Proposed Defendants was intended "to prevent *defendants* from attaching documents to their motions to dismiss without giving notice to plaintiffs[.]" FTC Reply at 15 (emphasis in original) (citing <u>Global Network Commc'ns, Inc. v. New York</u>, 458 F.3d 150, 155 (2d Cir. 2006)). Because this Court is not prepared to convert this motion into one for summary judgment, <u>see id.</u> at 16, it has considered only the facts alleged in the PAC itself in addressing the Proposed Defendants' futility argument.

(continued...)

## I.       PREJUDICE

In determining whether an amendment to the pleadings would result in undue prejudice,

courts consider "whether the assertion of the new claim would: (i) require the opponent to

expend significant additional resources to conduct discovery and prepare for trial; [or] (ii)

significantly delay the resolution of the dispute."  Block v. First Blood Assocs., 988 F.2d 344,

350 (2d Cir. 1993) (internal citations omitted).  Further, to quote Judge I. Leo Glasser, the

District Court judge assigned to this case:  "Any prejudice demonstrated must be balanced

against the court's interest in litigating all claims in a single action and [against] any prejudice

to the movant which would result from a denial of the motion."  State Farm Mut. Auto. Ins.

Co. v. CPT Med. Servs., P.C., 246 F.R.D. 143, 148 (E.D.N.Y. 2007) ("CPT I") (internal

quotation omitted).

The Proposed Defendants argue that they would be unfairly prejudiced because the case

has already been pending since last summer, and "the FTC has had over a ten-month lead on

fact investigation, document gathering, and case preparation."  Def. Opp. at 22-23.  The

Proposed Defendants note, however, that much of that documentation gathered by the FTC

came from the Proposed Corporate Defendants.  See id. at 22.  Furthermore, no trial date has

been set and much discovery remains; as described in a recent status report from the parties,

"[d]ocument discovery is underway, but no party has completed its production.  No party has

---

[5](...continued)
Nevertheless, as the FTC correctly notes, see id. at 15, the Court is free to consider that
evidentiary matter in assessing the Proposed Defendants' claim of prejudice.  In that regard,
the FTC's showing confirms that granting leave to amend is a just result.  See generally Fed.
R. Civ. P. 15.

noticed any depositions." Parties' Joint Status Report (Aug. 5, 2011) at 1, D.E. #233.

Various events have delayed discovery, including but not limited to the Werners' bankruptcy

filing and retention of new counsel, as well as ongoing discovery disputes between the FTC

and Leo. See id. at 2-3. A number of responses to discovery requests are not even due until

this month, and the parties have not yet completed drafting their stipulation and proposed

protective order for the Court's signature. Id. In fact, given the nature and extent of the

remaining discovery and unresolved discovery disputes between the parties, this Court was

constrained to extend the fact discovery deadline from October 21, 2011 to March 23, 2012.

See Order (Aug. 8, 2011), D.E. #234.

Consequently, the Proposed Defendants will have sufficient time to conduct discovery

and will not be unfairly prejudiced if the Court grants leave to amend. See, e.g., Am. Med.

Assoc. v. United Healthcare Corp., No. 00 Civ. 2800(LMM), 2006 WL 3833440, at *3-4

(S.D.N.Y. Dec. 29, 2006) (leave to amend granted, despite a delay of two and a half years).

In contrast, if the Court were to deny leave to amend, the FTC could simply file a separate

action against the Proposed Defendants; neither the Court nor the FTC should "be put to the

burden of [presiding over or] prosecuting two separate cases with identical factual predicates."

State Farm Auto. Ins. Co. v. Grafman, 04 CV 2609 (NG)(SMG) 2007 Dist. LEXIS 96751, at

*54-55 (E.D.N.Y. May 22, 2007); see also CPT I, 246 F.R.D. at 149. The Proposed

Defendants' prejudice challenge is unavailing.

## II.    FUTILITY

"Futility . . . is a minimal standard to overcome -- perhaps the lowest bar." Hall v. N.

Bellmore Union Free Sch. Dist., No. 08-CV-1999 (JS)(ARL), 2010 WL 1049280, at *3

(E.D.N.Y. Mar. 18, 2010) (quoting Innomed Labs, LLC v. Alza Corp., No. 01-CV-8095,

2002 WL 1628943, at *2 (S.D.N.Y. July 23, 2002)) (ellipses added in Hall). "An amendment

is futile if the claim would be unable to withstand a Rule 12(b)(6) motion to dismiss." Weich-

Pulaski v. Wells Fargo Bk., 2010 WL 5491113, at *2 (E.D.N.Y. Dec. 9, 2010) (citing

Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002)). On a motion to

dismiss, and thus in determining whether a proposed claim would be futile, the court "must

accept as true all of the factual allegations contained in the complaint." Id. (quoting Erickson

v. Pardus, 551 U.S. 89, 94 (2007)). The court must "determine whether the 'well-pleaded

factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"

Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Ashcroft v. Iqbal, __ U.S. __,

__, 129 S.Ct. 1937, 1950 (2009)). In other words. "[a]ll that is required is sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Lujan v.

Cabana Mgt., Inc., No. 10-CV-0755 (ILG), 2010 WL 5391462, at *4 (E.D.N.Y. Dec. 22,

2010), (Glasser, J.); see also State Farm Mut. Auto Ins. Co. v. CPT Med. Servs., P.C., 04

CV 5045 (ILG), 2008 WL 4146190, at *5 (E.D.N.Y. Sept. 5, 2008) ("CPT II") (the

complaint must allege only enough facts "to raise a reasonable expectation that discovery will

reveal evidence to support" the allegations) (internal quotation omitted). In this regard, it is

"generally accepted . . . that no material difference exists between the standards articulated by

Rules 15(a) and 21, and, as such, where parties satisfy the requirements under Rule 15(a) for

leave to amend, they will generally be permitted to add parties under Rule 21." Sanrio Co.,

2005 WL 1705746, at *1 (quotation and alteration omitted); <u>accord</u> <u>CPT I</u>, 246 F.R.D. at 146.

**A. The FTC Act and Telemarketing Rule**

The Court turns now to the pleading requirements applicable to the violations alleged in this case. To state a claim under the FTC Act, which prohibits "unfair or deceptive acts or practices in or affecting commerce," <u>see</u> 15 U.S.C. § 45(a)(1), the FTC must allege facts sufficient to show (1) a representation, omission or practice that (2) is likely to mislead consumers acting reasonably under the circumstances and (3) that the representation, omission or practice is material. <u>See</u>, <u>e.g.</u>, <u>FTC v. Verity Int'l, Ltd.</u>, 443 F.3d 48, 63 (2d Cir. 2006); <u>FTC v. Med. Billers Network, Inc.</u>, 543 F.Supp.2d 283, 303 (S.D.N.Y. 2008). There is no requirement of bad faith, or even intent to deceive. <u>See</u>, <u>e.g.</u>, <u>Verity Int'l</u>, 443 F.3d at 63. If shown to be false, express claims and deliberate implied claims are presumed to be material. <u>See</u>, <u>e.g.</u>, <u>In re Thompson Med. Co.</u>, 1984 WL 565377, at [59] (FTC 1984), <u>aff'd</u>, 791 F.2d 189 (D.C. Cir. 1986); <u>Med. Billers Network</u>, 543 F.Supp.2d at 304.

Corporate entities that operate in a common enterprise may be held liable for one another's deceptive acts and practices. <u>FTC v. Think Achievement Corp.</u>, 144 F.Supp.2d 993, 1011 (N.D. Ind. 2000). Courts consider various factors in determining whether a common enterprise existed, such as: (1) common control, (2) sharing of office space and officers, (3) whether business is transacted through "a maze of interrelated companies," (4) the commingling of corporate funds, and failure to maintain separation of companies, (5) unified advertising, and (6) any other evidence revealing that no real distinction existed between the corporate defendants. <u>See</u>, <u>e.g.</u>, <u>id.</u>; <u>see also</u> <u>Delaware Watch Co. v. FTC</u>, 332 F.2d 745, 746

(2d Cir. 1964). Inasmuch as no one factor is controlling, courts must consider "the pattern and frame-work of the whole enterprise . . . ." <u>Delaware Watch Co.</u>, 332 F.2d at 746.

Once corporate liability is established, an individual may be held liable under the FTC Act on the basis of deceptive corporate acts or practices where the individual participated directly in that conduct or had authority to control such practices. <u>See</u> <u>FTC v. Wellness Support Network, Inc.</u>, No. C-10-04879 JCS, 2011 WL 1303419, at *7 (N.D. Cal. Apr. 4, 2011); <u>Think Achievement</u>, 144 F.Supp.2d at 1011.

The Telemarketing Sales Rule ("TSR") was promulgated by the FTC pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 <i>et seq.</i>, which directs the FTC to "prescribe rules prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices." 15 U.S.C. § 6102(a)(1). The TSR prohibits the making of misrepresentations directly or by implication regarding any material aspect of goods or services that are the subject of a sales offer, and the rule requires that a seller clearly disclose no-refund policies before a customer pays. <u>See</u> 16 C.F.R. § 310.3(a); <u>see</u> <u>also</u> 15 U.S.C. § 6102(a)(3). A violation of the TSR is deemed a "deceptive act or practice" in violation of Section 5(a) of the FTC Act. <u>See</u> 15 U.S.C. § 6102(c). Consistent with congressional authorization, <u>see</u> 15 U.S.C. § 6102(a)(2), the TSR also includes a provision entitled "Assisting and facilitating," which prohibits a person from providing "substantial assistance" to any seller or telemarketer, knowing or consciously avoiding knowing that the seller or telemarketer engaged in any practice that violates the TSR. 16 C.F.R. § 310.3(b). The "substantial assistance" doctrine does not impose a demanding

standard, as it requires only that the assistance be "more than mere casual or incidental dealing with a seller or telemarketer that is unrelated to the violation of the Rule." Telemarketing Sales Rule, 60 Fed. Reg. 43842-01, 43852 (FTC, Aug. 23, 1995) (statement of basis and purpose of TSR). Knowledge or conscious avoidance of knowledge may be inferred when the person providing assistance receives complaints about violations. See United States v. Dish Network, L.L.C., 667 F.Supp.2d 952, 961 (C.D. Ill. 2009).

### B. The FTC's Claims

The theory of the FTC's case is that defendants, soliciting consumers through telemarketing, "marketed and sold a medical discount plan" (the "Plan") as if it were health insurance; made misrepresentations about the Plan, including its coverage and cancellation and refund policies, for the purpose of inducing sales; and pressured consumers into purchasing the Plan, while refusing to provide information until after customers had already paid. See PAC ¶¶ 22-40. These allegations clearly state a claim under the FTC Act and the TSR. Although the original complaint names only CHBA, NBC, NBS and NAFA, Leo and the Werners, the FTC alleges that initial discovery has revealed that GTLI, VAS and CSS "dominated CHBA in their corporate organization and participated in the [P]lan's creation and operations"; that Schwartz and Tow were equity owners in NBC and NBS; and that Schwartz, Tow, Burman, Taube and Holson participated in the "bad acts or otherwise knew of them and had authority to control the entities" involved in the corporate misconduct. FTC Mem. at 3. While the Proposed Defendants claim that they merely "engaged in business transactions with the Original Defendants," Def. Opp. at 3, the FTC alleges that the Proposed Defendants "stood at

-11-

the very heart of the common enterprise" that effectuated the "CHBA medical discount plan

scam":

> [The Proposed Defendants] helped create CHBA and other entities involved in the scheme, acted as *de facto* directors for the organizations, funded them, provided office space, assembled the plans, approved sales materials, trained sales and customer service staff, maintained customer databases, collected member dues, commingled those funds with their own funds, and took percentage cuts of the plan's profits.

FTC Mem. at 3-4. These allegations, which are detailed in the proposed amended pleading,

see PAC ¶¶ 45-52, 61-73, state claims against the Proposed Defendants under at least two

theories of liability: common enterprise liability and liability for providing "substantial

assistance" to a seller or telemarketer violating the TSR.

### 1. Proposed Corporate Defendants

The FTC contends that the Corporate Defendants and the Proposed Corporate

Defendants operated the medical Plan as a common enterprise. See PAC ¶ 21. The PAC

alleges specific facts concerning relevant factors -- such as common control, sharing of space,

and commingling of funds -- that are used to evaluate common enterprise liability. See

Delaware Watch Co., 332 F.2d at 746; Think Achievement, 144 F.Supp.2d at 1011; see also

FTC Reply at 8-9 (listing facts alleged in the PAC for each factor). Specifically, the proposed

pleading alleges that GTLI and VAS had control over CHBA, NAFA, NBS and NBC because,

*inter alia*, they "prepared the founding corporate documents for CHBA and NBC; named the

official directors; created NAFA and NBS; reviewed sales materials[,] . . . selected plan

components[,]" PAC ¶¶ 45, 49, and, in the case of GTLI, "provided the seed money for

CHBA and NBC." Id. ¶ 45. In addition, GTLI allegedly administered the Plan, collecting

fees, paying defendants, paying rent for CHBA's office space, collecting payments from consumers, managing bank accounts on behalf of defendants, and assisting with responding to consumer complaints regarding deceptive marketing of the Plan. See id. ¶ 46. Furthermore, GTLI allegedly "[d]eposited consumers' enrollment fees and monthly fees into an account" it maintained and "commingled these fees" with its own funds, id. ¶ 48, and VAS allegedly "contracted with vendors to provide purported plan benefits," "review[ed] marketing materials[, and] assisted with responding to consumer complaints." Id. ¶ 50. As further indicia of control, the PAC alleges that Burman, Holson and Taube, three of the Proposed Individual Defendants who, as GTLI executives, controlled GTLI, also "sat on the *de facto* board of directors of CHBA," which discussed sales strategies and membership goals for CHBA, and formed the so-called "Team CHBA," a term defendants used internally. Id. ¶¶ 47, 51. CSS is alleged to have provided office space to CHBA and NBC, paid rent and utilities for the office space, shared expenses with CHBA and NBC, provided funding to hire NBC employees, operated a call center to manage customer service calls, maintained bank accounts, and distributed materials to Plan members. See id. ¶ 52.

According to the FTC, these activities with respect to the Plan reflect the Proposed Corporate Defendants' "extensive" "control over the CHBA scheme . . . ." FTC Reply at 16. The aforesaid allegations are sufficient to support a claim of common enterprise liability. Whether the evidence ultimately shows that a common enterprise existed need not be determined at this stage. See CPT II, 2008 WL 4146190, at *5 ("The issue is not whether a plaintiff is likely ultimately to prevail, but whether the claimant is entitled to offer evidence to

-13-

support the claims.").

The FTC likewise argues that the same factual allegations demonstrate that the
Proposed Corporate Defendants violated the TSR, in that those entities provided substantial
assistance to the CHBA sellers and telemarketers (who were directly violating the TSR) and
knew or avoided knowledge of those violations.  See FTC Reply at 17.  More specifically, the
FTC contends and the PAC alleges that GTLI and VAS provided substantial assistance by,
*inter alia*, helping create CHBA; naming its directors; in GTLI's case, providing seed money
and paying various defendants; and in VAS's case, reviewing sales materials and contracting
with vendors to provide purported Plan benefits.  See id. at 17-18; PAC ¶¶ 45-46, 49-50.
Both entities are claimed to have had or avoided knowledge in that they allegedly assisted with
responding to consumer complaints.  See PTC Reply at 17-18; PAC ¶¶ 46, 50.  Furthermore,
the PAC alleges that VAS entered into a consent order regarding numerous violations of
Florida law arising from the scheme, further demonstrating its knowledge of the misconduct.
See PAC ¶ 50.  CSS is alleged to have rendered substantial assistance by, *inter alia*, providing
office space to CHBA and NBC, paying rent and utilities for the office space, and providing
funding to hire employees and contractors for NBC; CSS also purportedly operated a call
center managing customer service calls, indicative of its knowledge or avoidance of knowledge
of the misconduct complained of.  See id. ¶ 52.

### 2. Proposed Individual Defendants

Once corporate liability has been established, individual defendants are liable for
corporate acts or practices if they (1) participated in the wrongful acts or had authority to

control the corporate defendants and (2) knew of the acts or practices. See, e.g., FTC v. Crescent Publ'g Group, Inc., 129 F.Supp.2d 311, 324 (S.D.N.Y. 2001). "Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." FTC v. Amy Travel Serv., Inc., 875 F.2d 564, 573 (7th Cir. 1989) (quoted in Med. Billers, 543 F.Supp.2d at 320). The knowledge requirement may be satisfied by "actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with intentional avoidance of the truth." Med. Billers, 543 F.Supp.2d at 320 (quoting Amy Travel, 875 F.2d at 574). The FTC is "not required to show that a defendant *intended* to defraud consumers in order to hold that individual personally liable." Id. (quoting FTC v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) (emphasis in original)).

The proposed pleading in this case alleges that each of the Proposed Individual Defendants "had authority to control and direct the complained of activities, had participated in those activities, and had knowledge of [the] Corporate Defendants' misrepresentations and other misconduct[,]" and that each is therefore jointly and severally liable. PAC ¶¶ 62, 64, 67, 70, 73.

According to the PAC, the Proposed Individual Defendants had the requisite authority in part by virtue of their positions: as GTLI's President, Holson had authority to control GTLI and its subsidiaries CSS and VAS, see PAC ¶ 71; FTC Reply at 19; as VAS's President, Burman had authority to control VAS, and, as a GTLI Vice President, to control GTLI and

CSS, see FTC Reply at 19; PAC ¶ 65; and as a GTLI Vice President and CFO, Taube had authority to control GTLI and CSS. See FTC Reply at 70; PAC ¶ 68. As discussed above, *supra* p. 13, the FTC contends that the same three individuals who controlled GTLI – Holson, Burman and Taube – also controlled CHBA, and are therefore liable for the acts of CHBA. See FTC Reply at 20-21; PAC ¶¶ 66, 69, 72. Given his position as a Managing Member of NBC, Schwartz allegedly had authority to control NBC, and Tow, given her position as a Senior Vice President at CHBA and a Managing Member of NBC, had authority to control CHBA and NBC. See PAC ¶¶ 61-64.

As detailed in the PAC, each of the Proposed Individual Defendants was actively involved in the medical discount Plan scam. Specifically, Tow, as Senior Vice President in charge of member services of CHBA and NBC, allegedly reviewed customer complaints and oversaw cancellation and refund policies. See PAC ¶ 61. Schwartz, as Managing Member of NBC, allegedly trained and managed NBC's sales agents to telemarket the Plan. See id. ¶ 63. Burman allegedly designed the medical discount Plan and reviewed sales scripts and marketing materials for the Plan. See id. ¶ 65. Taube is claimed to have orchestrated the collection of payments for the Plan, determined how to distribute the funds, and managed cancellations and refunds. See id. ¶ 68. According to the PAC, Holson oversaw the sale and administration of the Plan. See id. ¶ 71.

In addition, each of the Proposed Individual Defendants purportedly had at least a "reckless indifference to the truth or falsity of [the] misrepresentations . . . ." Amy Travel, 875 F.2d at 574. As to Holson, Burman and Taube, the PAC asserts that they participated in

-16-

*de facto* CHBA board meetings and discussed sales strategies, membership goals, and litigation "involving similar deceptive practices." FTC Reply at 20; see PAC ¶¶ 66, 69, 72. Tow and Schwartz allegedly had the requisite knowledge as a result of their hands-on involvement with aspects of the Plan giving rise to the core violations, including, respectively, cancellation and refund policies and telemarketing. See PAC ¶¶ 61, 63.

As with the Proposed Corporate Defendants, the FTC contends that the same acts that establish common enterprise liability for the Proposed Individual Defendants also "constitute substantial assistance and knowledge that assisted and facilitated the telemarketers and sellers of the CHBA plan." FTC Reply at 21.

### 3. Defendants' Objections

The Proposed Defendants raise numerous challenges to the FTC's claims, but none satisfies their burden of establishing that the FTC's claims are futile. First, under the guise of objecting to the adequacy of the pleadings, the Proposed Defendants repeatedly dispute the merits of the FTC's claims. See, e.g., Def. Opp. at 7 n.3 (discussing evidence suggesting an alternative interpretation of Proposed Defendants' conduct); id. at 16 (arguing that the PAC does not prove that the defendants are sufficiently indistinct to establish common enterprise liability). Their analysis "is flawed." Searson v. Concord Mortg. Corp., No. 07-CV-3909 (DRH)(ARL), 2009 WL 3063316, at *3 (E.D.N.Y. Sept. 24, 2009): the Proposed Defendants are "essentially attempting to apply a summary judgment standard, instead of the liberal Rule 12(b)(6) standard that applies in this instance." Id. At this stage, the Court "should assess the legal sufficiency of the complaint rather than weigh the evidence that might be presented at trial[,]" CPT II, 2008 WL 4146190, at *5, accepting as true the pleading's factual allegations

and drawing all reasonable inferences in the FTC's favor. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

The Proposed Defendants repeatedly argue that the PAC fails to "sufficiently alleg[e] individualized claims" against the defendants. Def. Opp. at 6; see also id. at 3 (the FTC fails to "establish a nexus . . . between each Additional Defendant and the alleged deceptive acts"); at 8 ("the FTC does not differentiate the roles of the various individuals and entities"); id. at 11 ("[t]he FTC's allegations are generic claims asserted indiscriminately against all of the Defendants").[6] Similarly, the Proposed Defendants argue that "the FTC has not differentiated [the Proposed Defendants'] roles or stated a viable stand-alone action against any of them," id. at 6, and that the "FTC has failed . . . to plead specifics supporting its common enterprise theory . . . ." Id. at 14.[7]

_____

[6] Even if the PAC did not allege facts specific to each defendant -- and it does -- the cases cited by the Proposed Defendants on this score are inapposite. In two cases, in which courts granted leave to replead, the problem was that the complaints were not "short and plain," as required by Rule 8 of the Federal Rules of Civil Procedure; the "group pleading" language quoted by the Proposed Defendants, see Def. Opp. at 11, is taken out of context. See Nagel v. ADM Inv. Servs., Inc., 995 F.Supp. 837, 845 (N.D. Ill. 1998) (objecting to plaintiff's confusing and disjointed 93-page complaint); Roberto's Fruit Mkt., Inc. v. Schaffer, 13 F.Supp.2d 390, 396-97 (E.D.N.Y. 1998) (noting dozens of paragraphs devoted to tangents, making it difficult for the defendants to craft a responsive pleading). Here, in contrast, the Proposed Defendants argue that the FTC's amended complaint does not contain *enough* facts. And in Apace Commc'ns, Ltd. v. Burke, 522 F.Supp.2d 509, 517 (W.D.N.Y. 2007), also cited by the Proposed Defendants, the plaintiff's fraud allegations failed to meet the heightened standard under Rule 9(b) of the Federal Rules of Civil Procedure, which does not apply here. See *infra* pp. 19-20. In any event, the PAC describes the deceptive statements and other wrongful acts with great specificity, see PAC ¶¶ 22-40, and particularizes the role of each Proposed Defendant in that misconduct. See id. ¶¶ 45-52, 61-73.

[7] Curiously, while claiming that a finding of common enterprise liability on the facts alleged here would "expand the scope of the FTC ACT far beyond any prior cases," Def. Opp. at 17,

(continued...)

The Proposed Defendants misstate the PAC's allegations.  In fact, the FTC *does* allege

facts specific to each defendant, see *supra* pp. 12-17, see also PAC ¶¶ 41-73, which in turn

form the basis for liability as to each defendant under two different theories:  common

enterprise (by directly participating in the deceptive practices and/or wielding authority to

control such practices) and assisting violations of the TSR.  See FTC Reply at 15-21.  An

examination of the PAC refutes the Proposed Defendants' assertion that the pleading fails to

address the factors used to evaluate common enterprise liability.  Compare Def. Opp. at 14-15,

with PAC ¶¶ 41-73; see also *supra* pp. 12-13.  The pleading need not allege facts to state

independent claims against each of the Proposed Defendants; under common enterprise

liability, and liability for assisting violations of the TSR, each defendant may be jointly and

severally liable for the acts described in the pleading.  See PAC ¶ 21.

The Proposed Defendants further argue that the acts attributed to them do not constitute

deceptive acts and that the FTC "fails to identify any misrepresentation" that they made to

consumers.  Def. Opp. at 8; see also id. at 12 ("[t]he FTC does not allege any facts showing

that the Additional Corporate Defendants actually engaged in the alleged deceptive acts of

which the FTC complains . . . and, indeed they did not").  The Proposed Defendants would

have the Court measure the proposed pleading against the particularity requirements of Rule

9(b) of the Federal Rules of Civil Procedure, which governs fraud allegations.  Def. Opp. at

11.  However, most courts that have addressed this issue, including ones in this circuit, have

---

[7](…continued)
the Proposed Defendants cite only cases that found common enterprise liability and none that
held that that theory's scope of liability had been exceeded.  See id. at 17 n.5.

-19-

concluded that Rule 9(b) does not apply to deceptive practices claims under the FTC Act, inasmuch as such claims do not require proof of scienter, reliance or injury and thus are not fraud claims.  See, e.g., Med. Billers, 543 F.Supp.2d at 314-15 (collecting cases); FTC v. Freecom Commc'ns, Inc., 401 F.3d 1192, 1204 n.7 (10th Cir. 2005); FTC v. Innovative Mktg., Inc., 654 F.Supp.2d 378, 388 (D. Md. 2009).  In any event, in arguing that the PAC does not identify any specific misrepresentations that they personally communicated to consumers, the Proposed Defendants ignore the FTC's theories of common enterprise liability and "substantial assistance," under which even parties who did not engage directly in deceptive acts are jointly and severally liable for the deceptive acts of others, or for supporting and enabling those deceptions.  See PAC ¶¶ 21, 83.

The Proposed Defendants additionally argue that the FTC fails to state a claim under the TSR.  First they allege that the Proposed Defendants are neither sellers or telemarketers. See Def. Opp. at 20.  However, the TSR claim against the Proposed Defendants is based on a theory of substantial assistance, see PAC ¶ 83, which does not require that the alleged violator be a seller or telemarketer.  See 16 C.F.R. § 310.3(b).  The Proposed Defendants further contend that the FTC does not allege "substantial assistance" or knowledge or conscious avoidance of wrongdoing.  See Def. Opp. at 20-21.  This contention ignores the language of the PAC, which does in fact contain such allegations.  See supra pp. 14-17.  Citing examples of "assistance" listed in the Statement of Basis and Purpose of the TSR, see Telemarketing Sales Rule, 60 Fed. Reg. at 43852, the Proposed Defendants assume that the FTC's illustrations are exhaustive.  See Def. Opp. at 21.  They are not.  See Dish Network, 667 F.Supp.2d at 961.  Nor does the passage cited demonstrate that the acts alleged in the PAC are

not sufficiently "substantial" to support a finding of liability. "Substantial assistance" requires only that the assistance be "more than mere casual or incidental dealing with a seller or telemarketer that is unrelated to the violation of the Rule." Telemarketing Sales Rule, 60 Fed. Reg. at 43852. The FTC's allegations far surpass this low bar.

In yet another challenge to the PAC, the Proposed Defendants maintain that because the PAC does not allege sufficient facts to establish common enterprise liability, it does not state claims against GTLI, VAS or CSS, and, by extension, the Proposed Individual Defendants . See Def. Opp. at 18. However, as previously discussed, *supra* pp. 12-13, the FTC does properly allege common enterprise liability, implicating the Proposed Corporate Defendants. Furthermore, while the Proposed Defendants complain that the PAC makes "boilerplate" and "conclusory" allegations regarding the Proposed Individual Defendants, Def. Opp. at 19, the proposed pleading sets forth distinct facts to establish authority and knowledge with respect to each Proposed Individual Defendant, based not only on corporate titles but also the actual acts of the individuals involved. See PAC ¶¶ 61-73.

Finally, in an argument relegated to a single paragraph, the Proposed Defendants contend that even if the FTC Act authorizes an award of restitution, the PAC's claim for restitution is not properly pled. See Def. Opp. at 19-20. Although the Second Circuit has yet to decide whether Section 13(b) permits restitution, see Verity Int'l, 443 F.3d at 66 (assuming without deciding that restitution is available as ancillary relief), most courts that have reached this issue -- including ones in this circuit -- have concluded that such relief is available. See, e.g., FTC v. Bronson Partners, LLC, 674 F.Supp.2d 373, 378-79 (D. Conn. 2009) (collecting cases), appeal docketed, No. 10-878 (2d Cir. Nov. 8 2010); Med. Billers, 543 F.Supp.2d at

323-24.  The reasoning of those courts is persuasive.  See, e.g., Freecom Commc'ns, 401

F.3d at 1203 n.6 ("Although § 13(b) does not expressly authorize a court to grant consumer

redress (i.e., refund, restitution, rescission, or other equitable monetary relief), § 13(b)'s grant

of authority to provide injunctive relief carries with it the full range of equitable remedies,

including the power to grant consumer redress.").

    As for the defense contention that the PAC fails to allege the requisite knowledge and

consumer reliance to support a restitution claim, the Proposed Defendants cite the relevant case

law but ignore the contents of the PAC.  See Def. Opp. at 19-20.  The allegations of

knowledge have already been addressed and need not be repeated here.  See supra pp. 14-17.

Regarding the element of consumer reliance, "[t]he FTC satisfies its burden . . . by showing

that '(1) the business entity made material misrepresentations likely to deceive consumers, (2)

those misrepresentations were widely disseminated, and (3) consumers purchased the entity's

products.'"  Med. Billers, 543 F.Supp.2d at 324 (quoting Freecom Commc'ns, 401 F.3d at

1206).  The PAC alleges each of these elements.  See PAC ¶¶ 25-40.  Accordingly, the Court

rejects the challenge of the Proposed Defendants to the FTC's restitution claim.

    In sum, the Proposed Defendants fail to carry their burden to show that the claims in

the PAC are futile.  The FTC's allegations sufficiently assert claims that are plausible, which

is all that is required at this stage.

<u>CONCLUSION</u>

For the foregoing reasons, this Court grants the FTC's motion to amend the complaint and add new defendants.

Any objections to the ruling contained in this Memorandum and Order must be filed must be filed with the Honorable I. Leo Glasser on or before September 6, 2011. Failure to file objections in a timely manner may waive a right to appeal the District Court order. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to enter this Memorandum and Order into the ECF system.

**SO ORDERED.**

**Dated:**　　**Brooklyn, New York**
　　　　　**August 18, 2011**

　　　　　　　　　　　　**ROANNE L. MANN**
　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**