UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
FEDERAL TRADE COMMISSION,

        Plaintiff,                                 MEMORANDUM AND ORDER

       - against -                         10 Civ. 3551 (ILG) (RLM)

CONSUMER HEALTH BENEFITS
ASSOCIATION, et al.,

        Defendants.
-------------------------------------------------------x
GLASSER, Senior United States District Judge:

Currently before the Court are the applications for fees and expenses of (1) Tese & Milner, the attorneys for the receiver and escrow agent in this action, Angela Tese-Milner (the "Receiver"); and (2) EisnerAmper LLP ("EisnerAmper"), the Receiver's accountants.[1] Tese & Milner's applications cover the period from August 3, 2010 through November 10, 2010 and seek $121,997.00 in fees and $6,870.24 in expenses. EisnerAmper's applications cover the period from August 3, 2010 through February 18, 2011 and seek $116,120.00 in fees and $9,763.00 in expenses. Also before the Court is an application from the Receiver seeking $5,000.00 in compensation pursuant to a provision of the escrow agreement among the Receiver and the parties in this action dated December 16, 2010 (the "Escrow Agreement").[2]

---

[1] See Tese & Milner Application for Interim Compensation dated September 17, 2010 (Dkt. No. 36); Tese & Milner Amended Application for Final Compensation dated March 25, 2011 ("Am. App.") (Dkt. No. 144); Application of EisnerAmper LLP for Interim Allowance of Fees as Accountants for the Receiver dated September 22, 2010 (Dkt. No. 37); Application of EisnerAmper LLP for Final Allowance of Fees as Accountants for the Receiver dated February 22, 2011 ("EisnerAmper Final App.") (Dkt. No. 132).

[2] See Letter dated November 2, 2011 from Robert Schatzman, Nur-ul-Haq, and Angela Tese-Milner to the Court at 2 ("Nov. 2 Letter") (Dkt. No. 258). The Receiver, the Federal Trade Commission, and the defendants on December 22, 2010 entered into the Escrow Agreement after the expiration of the receivership on November 10, 2010. Id. at 2.

For the reasons set forth below, the applications are hereby GRANTED in part and DENIED in part.

## DISCUSSSION

**I. Receivership Compensation**

The amount of compensation to be awarded court-appointed receivers and the professionals that assist them is within the court's discretion. Sec. & Exch. Comm'n v. Byers, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); see also Gaskill v. Gordon, 27 F.3d 248, 253 (7th Cir. 1994) (citing Crites, Inc. v. Prudential Ins. Co., 322 U.S. 408, 418, 64 S. Ct. 1075, 1081, 88 L. Ed. 1356 (1944)); United States v. Code Prods. Corp., 362 F.2d 669, 673 (3d Cir. 1966). The court may "consider all of the factors involved in a particular receivership," Gaskill, 27 F.3d at 253 (citation omitted), including "the complexity of problems faced, the benefits to the receivership estate, the quality of the work performed, and the time records presented." Sec. & Exch. Comm'n v. Northshore Asset Mgmt., No. 05 Civ. 2192 (WHP), 2009 WL 3122608, at *3 (S.D.N.Y. Sept. 29, 2009) (quoting Sec & Exch. Comm'n v. Fifth Ave. Coach Lines, Inc., 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973)); see also Code Prods. Corp., 362 F.2d at 673 (relevant considerations are "time, labor and skill required, but not necessarily that actually expended, in the proper performance of the duties imposed by the court upon the receivers, the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained."). The court may also consider the opposition or acquiescence by the FTC to the compensation applications. Cf. Northshore, 2009 WL

2

3122608, at *3 ("Opposition or acquiescence by the SEC to the fee application will be given great weight." (quoting <u>Byers</u>, 590 F. Supp. 2d at 644)).

Both the Second Circuit and the Supreme Court have concluded that the standard for establishing a presumptively reasonable attorney's fee is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." <u>See Millea v. Metro-N.R.R. Co.</u>, —F.3d—, Nos. 10-409, 10-564, 2011 WL 3437513, at *2 (2d Cir. Aug. 8, 2011) (citing <u>Perdue v. Kenny A. ex rel. Winn</u>, —US.—, 130 S. Ct. 1662, 1673, 176 L. Ed. 2d 494 (2010) and <u>Arbor Hill Concerned Citizens v. Cnty. of Albany</u>, 522 F.3d 182, 183 (2d Cir. 2008)). The lodestar is "not 'conclusive in all circumstances,'" and "[a] district court may adjust the lodestar when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee." <u>Id.</u> (quoting <u>Perdue</u>, 130 S. Ct. at 1673). But "such adjustments are appropriate only in 'rare circumstances,' because the "lodestar figure already includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." <u>Id.</u> (quoting <u>Perdue</u>, 130 S. Ct. at 1673) (alterations omitted).

The reasonable hourly rate is "the rate a paying client would be willing to pay." <u>Arbor Hill</u>, 522 F.3d at 190. In determining the reasonable hourly rates to be applied, the court should look to the market rates prevailing in the relevant legal "community," specifically, "the district where the district court sits." <u>Arbor Hill</u>, 522 F.3d at 190; <u>accord Simmons v. N.Y. City Transit Auth.</u>, 575 F.3d 170, 174 (2d Cir. 2009) ("According to the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee."). After determining the appropriate hourly billing rate, the court calculates the hours reasonably expended. <u>See Gierlinger v. Gleason</u>, 160 F.3d 858, 876 (2d Cir. 1998). The

3

court does so by examining contemporaneous time records that identify, for each attorney, the hours expended on a task, "with a view to the value of the work product of the specific expenditures to the client's case." Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997); see also Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011) (per curiam).  If the court finds that any expenditure of time was excessive, redundant, or otherwise unnecessary, it should exclude these hours from the lodestar calculation.  See Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

   Applying all of the foregoing principles, the Court concludes that the fees sought by Tese & Milner and EisnerAmper are reasonable.  Tese & Milner seeks $121,997.00 in attorney's fees, based on hourly rates of $300 for partners Angela Tese-Milner and Michael M. Milner; $250 for senior attorney Lindsay Weber; $190 for attorneys awaiting admission Elan Mendel and Jessica Milner; and $150 for assistant counsel Esther Miller.  These hourly rates are within the general range of rates for law firm partners and more junior attorneys in this district:  between $300 and $400 for law firm partners and between $100 and $300 for law firm associates.  See, e.g., Concrete Flotation Sys., Inc. v. Tadco Construction Corp., No. 07 Civ. 319 (ARR) (VVP), 2010 WL 2539771, at *4 (E.D.N.Y. Mar. 15, 2010) (collecting cases).  Further, the hourly rates for the attorneys have been discounted; Angela Tese-Milner's hourly rate is usually $650.00, while the hourly rate of the other attorneys is typically $450.00.  These discounts bespeak recognition by the Receiver that "receivers and attorneys engaged in the administration of estates in the courts of the United States . . . should be awarded only moderate compensation." Byers, 590 F. Supp. 2d at 645 (quoting In re New York Investors, Inc., 79 F.2d 182, 185 (2d Cir. 1935)) (noting that the SEC ordinarily requests

4

that its receivers and their law firms grant some type of public service discount for their services typically 10%).[3] The total time spent by the Receiver and her colleagues performing her considerable mandate under the August 3, 2010 temporary restraining order, 528.10 hours, is reasonable as well and has been adequately substantiated with contemporaneous time records in accordance with New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

The same is true of EisnerAmper's fee request. EisnerAmper seeks a total of $116,120.00 in fees based on discounted hourly rates of $300 for partners, directors, and senior managers; $200 for staff accountants and paraprofessionals; and $100 for administrative assistants.[4] These hourly rates are reasonable as well. See Byers, 590 F. Supp. 2d at 648 (discounted and blended hourly rate of $350 for accountants to receiver reasonable). Further, the total time spent by EisnerAmper assisting the Receiver in this matter, 429.8 hours, is also reasonable particularly in light of the matter's complexity and EisnerAmper has substantiated the number of hours with detailed contemporaneous time records.

The reasonableness of the fee applications of Tese & Milner and EisnerAmper is supported by the fact that the FTC has asked the Court to grant them, a factor to be given great weight. See id. at 644 (view of SEC regarding reasonableness of requested fees of receiver's attorneys and accountants entitled to deference). Indeed, in support of

---

[3] So too does the fact that Tese & Milner also voluntarily reduced its final attorney's fees application by $4,783.00. Am. App. at 2.

[4] In addition to discounting its hourly rates, EisnerAmper voluntarily reduced the total amount of its requested fees by $4,010.00. EisnerAmper Final App. at 3.

the applications, the FTC states that is in a "unique position to consider the reasonableness of the hours expended" because "it has conducted its own investigation and received periodic reports regarding the Receiver's and her accountants' investigation," and is "familiar with the challenges associated with this investigation, as well as the many hours that the Receiver and EisnerAmper expended in connection with this matter." Response to Defendant Leo's Opposition dated October 21, 2010 at 9 (Dkt. No. 73). Just recently, the FTC again reiterated that it does not oppose the fee applications. Nov. 2 Letter at 2-3.

Also notable is that Ronald and Rita Werner, two of the other defendants in this action, did not oppose payment of the interim fee applications,[5] and have not opposed the final fee applications.

Only Defendant Louis Leo ("Leo") objects to the applications, maintaining that the Court should reject them entirely.[6] But his objections pertain largely to the validity of the allegations in the complaint and actions specifically authorized by the temporary restraining order entered August 3, 2010—issues unrelated to the compensation issues currently before the Court. Indeed, the Court stated as much during the October 28, 2010 hearing regarding the interim applications for compensation of Tese & Milner and EisnerAmper:

> [I]t is not the receiver's function and it wasn't to conduct an investigation de novo to ascertain whether all of the allegations made by the Federal

---

[5] See Transcript of Hearing before the Court on October 28, 2010 ("Tr.") at 17-18.

[6] See Response in Opposition to the Preliminary Report of Temporary Receiver filed October 15, 2010 at 35-36 (Dkt. No. 65); Response in Opposition to the Final Report of Temporary Receiver dated March 1, 2011 at 6 (Dkt. No. 133).

6

> Trade Commission regarding your client did or did not have merit. It was her function to preserve the assets of that business relying upon the allegations of the Federal Trade Commission. There are representations which you make which are clearly contrary or diametrically opposed to every allegation made in the complaint. As I have indicated, that is something that will be litigated at a later time and I am not dealing with that now.

Tr. at 17-18. The same is true today, and Leo has failed to provide the Court with any basis to reduce the amount of fees requested in the applications, let alone to reject them entirely.

Accordingly, for all of these reasons, the Court will allow fees in the amounts of (1) $121,997.00 for Tese & Milner; and (2) $116,120.00 for EisnerAmper.

The Court will also allow expenses in the amount of (1) $6,870.24 for Tese & Milner; and (2) $9,763.00 for EisnerAmper. The expenses sought here are of the type normally incurred and charged to clients, including travel, postage fees, and telephone calls, and are therefore recoverable. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).

## II. Escrow Agent Compensation

The Receiver also seeks compensation for herself and "her professionals" pursuant to the Escrow Agreement. The Escrow Agreement provides, among other things, that the Receiver, as escrow agent, will hold the defendants' previously frozen funds in an escrow account pending the outcome of this action subject to the instructions of the Court. Nov. 2 Letter Ex. A (Escrow Agreement dated December 16, 2010). It also provides that she "shall be entitled to be paid for any reasonable and necessary fees arising from her duties as Escrow Agent pursuant to this agreement, not to exceed

$5,000.00." Id. Ex. A. ¶ 6. The Receiver seeks compensation under this provision of the Escrow Agreement. Id. at 2.

This application is hereby denied without prejudice to renewal as the Receiver has provided the Court with no basis on which to determine the reasonableness of the requested fees.

## CONCLUSION

For the reasons set forth above, the applications for fees and reimbursement of expenses are hereby GRANTED as follows:

(1) Tese & Milner is allowed fees of $121,997.00 and reimbursement of expenses of $6,870.24; and

(2) EisnerAmper is allowed fees of $116,120.00 and reimbursement of expenses of $9,763.00.

The Receiver's application for compensation pursuant to the Escrow Agent is hereby DENIED without prejudice to renewal.

SO ORDERED.

Dated: Brooklyn, New York
November 10, 2011

/s/
I. Leo Glasser
Senior United States District Judge

8