UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
FEDERAL TRADE COMMISSION,

          Plaintiff,                              MEMORANDUM AND ORDER

    - against -                          10 Civ. 3551 (ILG) (RLM)

CONSUMER HEALTH BENEFITS
ASSOCIATION, et al.,

          Defendants.
------------------------------------------------------x
GLASSER, Senior United States District Judge:

        On October 12, 2011, the Court affirmed Magistrate Judge Mann's order dated August 18, 2011 granting plaintiff the Federal Trade Commission (the "FTC") leave to amend the complaint in this consumer protection arising under the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 53(b) and 57b, the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and the FTC Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310, et seq. Order dated Oct. 12, 2011 at 5-10 (the "Order") (Dkt. No. 250). The FTC on October 13, 2011 filed an amended complaint, Am. Compl. dated Oct. 13, 2011 (Dkt. No. 252), and on November 22, 2011, each of the defendants newly-named in the amended complaint moved to dismiss it pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure, largely rehashing arguments Magistrate Judge Mann and the Court have already considered and rejected. Those newly-named defendants are: John Schwartz ("Schwartz"), a member of NBC and NBS; Wendi Tow ("Tow"), also a member of NBC and NBS; Guaranteed Trust Life Insurance Co. ("GTLI"); Vantage America Solutions, Inc. ("Vantage"), a subsidiary of GTLI; Century Senior Services ("Century"), also a

1

subsidiary of GTLI; and a number of GTLI's employees and officers:  Jeffrey Burman ("Burman"); Richard Holson, III ("Holson"); and Barbara Taube ("Taube") (together, the "GTLI Defendants").[1]  The GTLI Defendants have moved in the alternative for a more definite statement of the claims against them pursuant to Fed. R. Civ. P. 12(e).  For the following reasons, the motions to dismiss and the motion for a more definite statement are DENIED.

## I.  BACKGROUND

The following facts are taken from the amended complaint and are accepted as true for the purpose of this motion.  See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

This action concerns the deceptive marketing of a medical discount plan in violation of the FTC Act, the Telemarketing Act, and the TSR by the defendants.  The crux of the amended complaint is that defendants, in a common enterprise, solicited consumers seeking major medical insurance[2] and, in addition to using high-pressure

---

[1] The Court will refer to GTLI, Vantage, and Century as the "GTLI Corporate Defendants," and to Burman, Holson, and Taube as the "GTLI Individual Defendants."

The other defendants in this action are:  Consumer Health Benefits Association ("CHBA"), National Association For Americans ("NAFA"); National Benefits Consultants, LLC ("NBC"); National Benefits Solutions, LLC ("NBS") (together, "Corporate Defendants"); Ron Werner, individually as Managing Member of NBC and NBS and President and Managing Partner of CHBA; Rita Werner, individually and as the Senior Vice President and Director of Operations of CHBA; and Louis Leo, individually, as a Managing Member of NBC and NBS, and as Vice President and Treasurer of CHBA.

[2] While major medical health insurance generally involves an agreement between

sales tactics, falsely represented that their medical discount plan was major medical health insurance, when it was not, or that their medical discount plan would provide similar coverage to major medical health insurance, when it did not—actions that caused numerous consumers to purchase the medical discount plan.  See, e.g., Am. Compl. ¶¶ 22, 26, 29-31, 33.[3]  The FTC also alleges that defendants made false representations to consumers regarding the discount plan's cancellation policy and charged consumers fees for the plan even after consumers had been told that the plan had been cancelled.  Am. Compl. ¶¶ 39-40.

The role played by each of the newly-added defendants in the venture was one that bespeaks a common enterprise.  GTLI acted as an administrator for the medical discount plan by, among other things, collecting consumer's enrollment fees, paying rent for office space for CHBA, maintaining bank accounts on behalf of defendants, and responding to consumer complaints regarding deceptive marketing of the medical discount plan.  Am. Compl. ¶ 46.  Three of its executives—Burman, Taube, and Holson— sat on the de facto board of directors of CHBA, and discussed at meetings sales strategies and membership goals, along with litigation brought by the Illinois Attorney General regarding deceptive sales practices.  Am. Compl. ¶ 47.  GTLI also deposited

---

an insurance company and a consumer in which the insurer agrees to pay a substantial portion of the healthcare expenses that a consumer might incur in exchange for payment of a premium by the consumer, the medical discount plans marketed by defendants  "purported to provide" consumers with access to various discounts on healthcare and healthcare related services and products.  Am. Compl. ¶ 25.

[3] NBC and NBS are specifically alleged to have engaged in telemarketing of the medical discount plan beginning in 2003 and 2009 respectively.  Am. Compl. ¶ 24.

consumer payments for the medical discount plan into an account that it maintained and commingled these funds with funds unrelated to the plan.  Am. Compl. ¶ 48.

Vantage prepared the founding corporate documents for CHBA and NBC, named their directors, created NAFA and NBS, reviewed sales materials, selected medical discount plan components, and contracted with vendors to provide purported plan benefits.  Am. Compl. ¶ 49.  It also reviewed marketing materials, assisted with responding to consumer complaints regarding the plan, and served as the Discount Medical Plan Organization ("DMPO") that provided the plan.  Am. Comp. ¶ 50.[4]  In addition, Burman, who sat on CHBA's de facto board of directors, was its president.  Am. Compl. ¶¶ 51, 65-67.

Meanwhile, Century, among other things, provided office space to CHBA and NBC, paid rent and utilities for the office space, shared expenses with CHBA and NBC, provided funding to hire employees and contractors for CHBA and NBC, operated a call center to manage customer service calls, and distributed materials to new members of the medical discount plan.  Am. Compl. ¶ 52.

With respect to the GTLI Individual Defendants—Burman, Taube, and Holson—in addition to sitting on the de facto board of CHBA, they were involved in the marketing and sale of the medical discount plan in the following ways:  (1) Burman designed the medical discount plan and reviewed sales scripts and marketing materials

---

[4] As the DMPO, Vantage entered into a consent order with the Florida Office of Insurance Regulation regarding nearly a dozen violations of the Florida Insurance and Administrative Codes, including violations based on the failure to properly advise consumers of the plan's no-refund policy, not providing refunds, and making it difficult for consumers to cancel.  Am. Compl. ¶ 50.

used by NBC and NBS, Am. Compl. ¶ 65; (2) Taube determined how to distribute funds among the entity defendants and whether to refund consumers who requested cancellations and refunds as a result of misrepresentations concerning the plan, Am. Compl. ¶ 68; and (3) Holson oversaw the sale and administration of the medical discount plan, Am. Compl. ¶ 71.

Tow and Schwartz were also responsible for overseeing certain aspects of the medical discount plan. Tow, as Senior Vice President in charge of member services of CHBA and managing member of NBC, orchestrated these companies' business activities, including reviewing consumer complaints and overseeing cancellation and refund practices. Am. Compl. ¶ 61. Similarly, Schwartz, as managing member of NBC, orchestrated the company's business activities, including training and managing NBC's sales agents who marketed the medical discount plan. Am. Compl. ¶ 63.

In light of these allegations, the Court on October 12, 2011 affirmed Magistrate Judge Mann's ruling granting the FTC leave to file an amended complaint and her conclusions that the proposed amended complaint contained sufficient factual allegations to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and that the claims at issue were not subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).

Nevertheless, on November 22, 2011, the GTLI Defendants filed a motion to dismiss pursuant to Fed. R. Civ. 12(b)(6), or, alternatively, for a more definite statement pursuant to Fed. R. Civ. P. 12(e). GTLI's Memorandum of Law dated Nov. 22, 2011 ("GTLI's Mem.") (Dkt. No. 270). That same day, Tow and Schwartz filed a motion to dismiss pursuant to Fed. R. Civ. P. 9(b). Tow and Schwartz's Memorandum of Law

dated Nov. 22, 2011 ("Tow's Mem.") (Dkt. No. 265).  The FTC filed its opposition

submissions on December 13, 2011.  FTC's Memorandum of Law in Opposition dated

Dec. 13, 2011 ("Pl.'s Opp'n") (Dkt. No. 276).  The GTLI Defendants on December 23,

2011 filed their submissions in reply.  GTLI's Reply Memorandum of Law dated Dec. 23,

2011 ("GTLI's Reply") (Dkt. No. 278).  Tow and Schwartz did not file reply submissions.

## II. DISCUSSION

### A. Applicable Legal Principles

#### 1. Legal Standard for 12(b)(6) Motions

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to

include "a short and plain statement of the claim showing that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss pursuant to Rule

12(b)(6), the FTC's pleading must contain "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1940 (quoting

Twombly, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads

factual content that allows the Court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  Although

detailed factual allegations are not necessary, the pleading must include more than an

"unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions,

"a formulaic recitation of the elements of a cause of action," or "naked assertions" by the

plaintiff will not suffice.  Id. at 1949 (alteration in original) (internal quotations,

citations, and alterations omitted).  This plausibility standard "is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  Determining whether a

6

complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

For the foregoing reasons, the motions pursuant to Fed. R. Civ. P. 12(b)(6) are denied.

### 2.  Legal Standard for 12(e) Motions

Rule 12(e) of the Federal Rules of Civil Procedure provides, in relevant part, that a party may move for a more definite statement of a pleading which is "so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e). Motions pursuant to Fed. R. Civ. P. 12(e) "should not be granted unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.  The Rule is designed to remedy unintelligible pleadings, not to correct for lack of detail."  Maxwell v. N.Y. Univ., No. 08 Civ. 3583 (HB), 2008 WL 5435327, at *2 (S.D.N.Y. Dec. 31, 2008) (internal citations and quotation marks omitted); accord 1 Michael C. Silberberg, et al., Civil Practice in the Southern District of New York § 11:19 (2d ed. 2010) ("[A] motion for a more definite statement should not be granted if the complaint complies with the requirements of Fed. R. Civ. P. 8." (citations omitted)).  Moreover, Rule 12(e) motions are generally disfavored because of their dilatory effect.  See, e.g., Joya v. Verizon N.Y., Inc., No. 08 Civ. 5328 (PKL), 2008 WL 4667987, at *1-2 (S.D.N.Y. Oct. 20, 2008) (collecting cases).

For the foregoing reasons, the motion pursuant to Fed. R. Civ. P. 12(e) is denied.

### 3.  The Law of the Case Doctrine

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983).  The doctrine generally applies unless there has been "an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." Johnson v. Holder, 564 F.3d 95, 99-100 (2d Cir. 2009).  It is prudential and discretionary; it "does not rigidly bind a court to its former decisions, but is only addressed to its good sense." Higgins v. Cal. Prune & Apricot Grower, Inc., 3 F.2d 896, 898 (2d Cir. 1924) (L. Hand, J.); accord Doctor's Assocs. v. Distajo, 107 F.3d 126, 131 (2d Cir. 1997) ("[The doctrine] does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided.").  It ensures that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (citation and internal quotation marks omitted). Thus, as a general rule, a court should be "'loathe' to revisit an earlier decision 'in the absence of extraordinary circumstances.'" N. River Ins. Co. v. Phil. Reinsurance Corp., 63 F.3d 160, 165 (2d Cir. 1995) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817, 108 S. Ct. 2166, 2178, 100 L. Ed. 2d 811 (1988)).  Additionally, "a court may raise law of the case issues sua sponte." United States v. Matthews, 643 F.3d 9, 12 n.1 (1st Cir. 2011) (citation omitted); see also DiLaura v. Power Auth. of State of N.Y., 982 F.2d 73, 75 (2d Cir. 1992).

### 4.  Section 5 of the FTC Act

Section 5(a)(1) of the Federal Trade Commission Act ("FTC Act") prohibits "[u]nfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a)(1). To state a claim for a deceptive act or practice under Section 5(a)(1), a plaintiff must allege facts sufficient to show:  "[1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3], the representation, omission, or practice is material." Fed. Trade Comm'n v. Verity Int'l, Ltd., 443 F.3d 48, 63 (2d Cir. 2006) (internal quotation marks and citation omitted). There is no requirement that the deception be made with intent to deceive; it is enough that the representations or practices were likely to mislead consumers acting reasonably.  Id.  Further, if the structure, organization, and operation of a business venture among separate corporate entities reveal a common enterprise or a "maze of interrelated companies," the FTC Act disregards the corporate form. Del. Watch Co. v. Fed. Trade Comm'n, 332 F.2d 745, 746 (2d Cir. 1964) (per curiam).  Factors relevant in a court's consideration of whether a common enterprise among entities exists include whether they (1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing.  See, e.g., Fed. Trade Comm'n v. Neovi, Inc., 598 F. Supp. 2d 1104, 1116 (C.D. Cal. 2008) (corporations found to be in common enterprise and thus held jointly and severally liable where corporations shared office space, executives and employees, payroll funds, and advertising).

With respect to individual liability, "[a]n individual will be liable for corporate violations of the FTC Act if (1) he participated directly in the deceptive acts or had the

authority to control them and (2) he had knowledge of the misrepresentations, was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of a high probability of fraud along with an intentional avoidance of the truth." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 931 (9th Cir. 2009) (citation omitted); see also Fed. Trade Comm'n v. Amy Travel Serv., Inc., 875 F.2d 564, 574 (7th Cir. 1989). The degree of participation in a corporate defendant's affairs can be probative of knowledge. See, e.g., Amy Travel, 875 F.2d at 574. Further, an individual's status as a corporate officer on behalf of a corporate defendant can be probative of control. See, e.g. Fed. Trade Comm'n v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1170 (9th Cir. 1997) (president of defendant corporation with authority to sign documents on its behalf had requisite control over corporation such that individual liability could be imposed).

### 5.  The Telemarketing Sales Rule

The Telemarketing Sales Rule was promulgated by the FTC under the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 et seq., and forbids a seller or telemarketer from, among other things, "[m]isrepresenting, directly or by implication . . . [a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer." 16 C.F.R. § 310.3(a)(2)(iii). It also requires a seller or telemarketer to disclose any no-refund policy "in a clear and conspicuous manner." Id. § 310.3(a)(1). This disclosure must be made "[b]efore a customer consents to pay for goods or services." Id. A violation of the TSR constitutes a "deceptive act or practice" in violation of Section 5(a) of the FTC Act. See 15 U.S.C. § 6105(b) (allowing FTC to enforce violations of the TSR as though they were violations of the FTC Act); see also Stefanchik, 559 F.3d at 930 n.17.

The TSR also forbids "assisting or facilitating" violations of the TSR:  "[i]t is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of this Rule."  16 C.F.R. § 310.3(b).  The threshold for what constitutes "substantial assistance" is low:  "there must be a connection between the assistance provided and the resulting violations of the core provisions of the TSR."  United States v. Dish Network, L.L.C., 667 F. Supp. 2d 952, 961 (C.D. Ill. 2009) (substantial assistance found where defendant paid dealers to engage in telemarketing that violated TSR and allegedly knew or consciously avoided knowledge of violations).

## B. Application

### 1.  Rule 9(b) Does not Apply to the FTC's Claims

The GTLI Defendants, along with Tow and Schwartz, argue the claims in the amended complaint sound in fraud and thus require application of the heightened pleading standard of Fed. R. Civ. P. 9(b), which the factual allegations in the complaint fail to meet.  GTLI's Mem. at 4-6; Tow's Mem. at 4-7.[5]  It is true that there is a split in authority regarding whether claims brought under the FTC Act and, by extension, the TSR require application of Fed. R. Civ. P. 9(b), compare Fed. Trade Comm'n v. Lights of Am., Inc., 760 F. Supp. 2d 848, 854 (C.D. Cal. 2010) (concluding that "Rule 9(b) applies to claims for violation of the FTC Act"), with Fed. Trade Comm'n v. Freecom Commc'ns,

---

[5] Fed. R. Civ. P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Inc., 401 F.3d 1192, 1204 n.7 (10th Cir. 2005) (noting in dicta that "[a] § 5 claim simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b), . . . . Unlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury to establish a § 5 violation" (collecting cases)), and Fed. Trade Comm'n v. Medical Billers Network, Inc., 543 F. Supp. 2d 283, 314 (S.D.N.Y. 2008) (expressing doubt in dicta as to the applicability of Rule 9(b) to claim alleging violation of TSR); see generally 2-9 James W. Moore, Moore's Federal Practice, § 9.03[e] (3d ed. 1997) (discussing split in authority).  But the Court has already considered and rejected the contention that the claims in the amended complaint sound in fraud.  Order at 9 ("[T]he claims at issue here do not sound in fraud and are thus not subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).").  This ruling is the law of the case, and prudence counsels against disturbing it.  There is no controlling authority in this Circuit with respect to whether claims arising under the FTC Act and the TSR sound in fraud; nor is there a need to correct a clear error or prevent a manifest injustice.  See Fogel v. Chestnutt, 668 F.2d 100, 109 (2d Cir. 1991) ("Mere doubt . . . is not enough to open the point for full reconsideration.").

Even if the Court were to reach the issue of whether the claims sound in fraud and are thus subject to the pleading requirements of Fed. R. Civ. P. 9(b), it would conclude that they do not.  Instructive is the Second Circuit's decision in Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005), in which the court considered whether claims brought under Section 349 of the New York General Business Law—part of the New York Consumer Protection Act—were subject to Rule 9(b)'s pleading

requirements.[6]  Answering this question in the negative, the Second Circuit found that "because § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices, and because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b)." Id. at 511 (citations omitted).[7]

Similarly, here, claims brought under Section 5 of the FTC Act also do not require proof of the same essential elements of common law fraud.  Fraud claims under New York law require:  (1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant; (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it; (3) justifiable reliance of the plaintiff on the misrepresentation or material omission; and (4) injury, see, e.g., Jablonski v. Rapalje, 14 A.D.3d 484, 487, 788 N.Y.S.2d 158 (2d Dep't 2005) (citations omitted), while claims brought under Section 5 of the FTC Act require proof of neither scienter, nor reliance, nor injury, see, e.g., Freecom Commc'ns, Inc., 401 F.3d at 1204

---

[6] The New York Court of Appeals has referred to the New York Consumer Protection Act as a "mini-FTC act," People v. Applied Card Sys., Inc., 11 N.Y.3d 105, 120, 894 N.E.2d 1, 863 N.Y.S.2d 615 (2008), and has noted that the New York legislature modeled portions of it on the FTC Act, Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 26, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995).

[7] Section 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a) (McKinney 2012).  The elements of a Section 349 claim are as follows: (1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007) (citations omitted).

n.7.  Moreover, like Section 349, Section 5 of the FTC Act covers a broad range of deceptive practices, declaring unlawful any "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a).[8]  Where, as here, similar statutory provisions are found in comparable statutory schemes, courts should presumptively apply them the same way.  See, e.g., Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. 618, 640, 127 S. Ct. 2162, 167 L. Ed. 2d 982 (2007) (applying this canon of construction and finding National Labor Relations Act but not Equal Pay Act or Fair Labor Standards Act analogous to Title VII for limitations purposes where it "provided a model for Title VII's remedial provisions").  Thus, were the Court to reach the issue of whether claims brought under Section 5 of the FTC Act are subject to Rule 9(b), it would conclude that in light of the Second Circuit's interpretation of Section 349 in Pelman, the claims in the amended complaint need not be pleaded with particularity.[9]

------

[8] Both of these factors also hold true with respect to claims brought under the TSR, violations of which also constitute violations of the FTC Act.  See 15 U.S.C. § 6105(b).

[9] The Court finds unpersuasive the contention of Tow, Schwartz, and the GTLI Defendants that the Second Circuit's decision in Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004), controls.  That case merely involved the question of "whether the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure applies to claims brought under Section 11 and Section 12(a)(2) of the Securities Act," id. at 166, statutory provisions nothing like the one at issue here.

Their reliance on district court decisions from the Ninth Circuit concluding that claims brought under Section 5 of the FTC Act are subject to Rule 9(b) is similarly misplaced.  The courts in two of those decisions did so based on Ninth Circuit precedent that a claim can sound in fraud without having all of the traditional common law elements of a fraud claim—a conclusion seemingly at odds with Pelman.  See Fed. Trade Comm'n v. Lights of Am., Inc., 760 F. Supp. 2d 848, 852 (C.D. Cal. 2010) (it is "well-established Ninth Circuit law . . . that, even where a claim does not include all of the elements of a claim for fraud, it is subject to the heightened pleading requirements of

The GTLI Defendants contend that even if the pleading requirements of Rule 9(b) do not apply, the amended complaint still fails to state a claim.  GTLI's Mem. at 7.  Tow and Schwartz do not; they simply move to dismiss the amended complaint "for failure to plead fraud with particularity as required by Fed. R. Civ. P. 9(b)."  Tow's Mem. at 3. Since the Court has already concluded that the amended complaint sufficiently alleges claims against Tow and Schwartz and that Fed. R. Civ. P. 9(b) is inapplicable, Tow and Schwartz's motion to dismiss is DENIED.  The Court turns to the GTLI Defendants' remaining contentions in the following section.

### 2.  The GTLI Defendants' Remaining Contentions are Meritless

The GTLI Defendants next argue that the amended complaint fails to allege facts sufficient to support claims based on common enterprise liability against the GTLI Corporate Defendants.  GTLI's Mem. at 7-10.  The Court has already rejected this argument and addressed each of the cases upon which the GTLI Defendants rely in support of this contention:

> The Magistrate Judge correctly set forth the various factors that courts balance in determining whether a common enterprise existed—none of which is dispositive—and identified a number allegations in the amended complaint that were sufficient to support a claim of common enterprise liability.  As for the cases relied on by the GTLI Corporate Defendants, each involved a different procedural posture than the one presented here and, in any event, each ultimately concluded that common enterprise liability existed.  See, e.g., Fed. Trade Comm'n v. Nat. Urological Grp., 645 F. Supp. 2d 1167, 1183-84 (N.D. Ga. 2008) (summary judgment denied where "overwhelming evidence of the corporations' interrelated functions"

---

Rule 9(b) if it sounds in fraud" (citation, quotations, and alteration omitted)); Fed. Trade Comm'n v. Ivy Capital, Inc., No. 2:11-CV-283 JCM (GWF), 2011 WL 2118626, at *3 (D. Nev. May 25, 2011) (following reasoning of Lights of America).  As for the third, Federal Trade Comm'n v. Benning, No. C 09-03814 RS, 2010 WL 2605178, at *3-4 (N.D. Cal. June 28, 2010), the court there applied Rule 9(b) without explanation.

> existed); <u>Fed. Trade Comm'n v. Neovi, Inc.</u>, 598 F. Supp. 2d 1104, 1116
> (S.D. Cal. 2008) (common enterprise existed where evidence presented on
> summary judgment "show[ed] that there [wa]s no real distinction between
> the companies for the purposes of assessing liability under FTC case law");
> <u>Fed. Trade Comm'n v. Data Med. Capital</u>, No. 99 Civ. 1266 (AHS) (EEX),
> 2010 WL 1049977, at *23 (C.D. Cal. Jan 15, 2010) (evidence presented at
> civil contempt hearing sufficient to establish common enterprise among
> corporate defendants).  As the Magistrate Judge noted, "[w]hether the
> evidence ultimately shows that a common enterprise existed need not be
> determined at this stage."  Order at 13.

Order at 6-7.  These rulings are the law of the case, and the Court declines to revisit

them.  The amended complaint sufficiently alleges FTC Act claims against the GTLI

Corporate Defendants based on a theory of common enterprise; accordingly, the GTLI

Defendants' motion dismiss the FTC Act claims against the GTLI Corporate Defendants

is DENIED.

   The GTLI Defendants also contend the amended complaint fails to allege facts

sufficient to show that the GTLI Individual Defendants are jointly and severally liable

for the actions of the GTLI Corporate Defendants.  GTLI's Mem. at 10-15.[10]  The Court

previously stated:

> [The GTLI Individual Defendants] contend, among other things, that the
> amended complaint fails to allege sufficient facts to state a claim that they
> had the requisite knowledge of the material misrepresentations at issue in
> the case.  GTLI Mem. at 7-12.  This argument fails.  The Magistrate Judge's
> conclusion that the amended complaint contains sufficient factual
> allegations to state a claim that the GTLI Individual Defendants had at
> least "'reckless indifference to the truth or falsity of [the]
> misrepresentations,'" Order at 16 (quoting <u>Fed. Trade Comm'n v. Amy</u>

---

[10] They earlier contended, among other things, "the amended complaint fails to
allege sufficient facts to state a claim that they had the requisite knowledge of the
material misrepresentations at issue in the case."  Order at 7.  They acknowledge,
moreover, that they made this argument to the Court previously.  GTLI's Mem. at 11
("The GTL Defendants have already argued this point in their Objections, and
respectfully refer the Court to that discussion.").

Travel Serv., Inc., 875 F.2d 564, 574 (7th Cir. 1989)), was neither clearly erroneous nor contrary to law.  Indeed, the amended complaint alleges that each of the GTLI Individual Defendants sat on the de facto board of directors of CHBA and participated in board meetings in which the board discussed sales strategies, membership goals, and litigation brought by the Illinois Attorney General regarding deceptive sales practices.  Am. Compl. ¶¶ 66, 69, 72.  Further, it alleges that (1) Burman, among other things, designed the Corporate Defendants' medical discount plan and reviewed sales scripts and marketing materials used by NBC and NBS, Am. Compl. ¶ 65, (2) Taube, among other things, determined how to distribute funds among the Corporate Defendants and whether to refund consumers who requested cancellations and refunds, Am. Compl. ¶ 68, (3) Holson, among other things, oversaw the sale and administration of the medical discount plan, Am. Compl. ¶ 71.

This ruling is the law of the case as well, and the amended complaint contains sufficient factual allegations to show that the GTLI Individual Defendants, by virtue of their roles as officers of the GTLI Corporate Defendants[11] and their participation in various key aspects of the Corporate Defendants' business had control over the Corporate Defendants and at least a "reckless indifference to the truth or falsity of [the] misrepresentations" at issue in the case, Amy Travel, 875 F.2d at 574.  Indeed, with respect to the GTLI Individual Defendants' knowledge, the amended complaint alleges that they each were part of a group referred to internally as "Team CHBA," participated in CHBA meetings in which they discussed sales strategies, membership goals, and "litigation regarding deceptive practices."  Am. Compl. ¶¶ 66, 69, 72.[12]

_____

[11] The Court has already concluded that the amended complaint sufficiently alleges that the GTLI Corporate Defendants were engaged in a common enterprise with the Corporate Defendants.

[12] The GTLI Individual Defendants make much of the FTC's use of the term "de facto board," contending that "no inference of control should be drawn from the FTC's talismanic recitation of the phrase 'de facto.'"  GTLI's Reply at 7.  The Court draws no such inference.  The GTLI Individual Defendants' participation in CHBA meetings—

17

Further, each of the cases relied upon by the GTLI Individual Defendants in support of their contention are inapposite.  In Federal Trade Commission v. Swish Marketing, No. C 09-03814 RS, 2010 WL 653486, at *5-6 (N.D. Cal. Feb. 22, 2010), the court granted the motion to dismiss of the individual defendant, the corporate defendant's chief executive officer, where the FTC argued that the individual's "status as CEO, standing alone, plausibly demonstrates his control over the company (and warrants the inference of involvement in the deception)" and where the complaint presented "no facts to tie [the individual] to the . . . scheme or to suggest his knowledge."[13]  By contrast, here, the FTC does not rely solely on the GTLI Individual Defendants' titles in establishing their control or knowledge, and the amended complaint contains a number of allegations tying the GTLI Individual Defendants to the Corporate Defendants' scheme:  (1) their participation in de facto CHBA board meetings, Am. Compl. ¶¶ 66, 69, 72; (2) Burman's design of the Corporate Defendants' medical discount plan and review of the sales scripts and marketing materials used by NBC and NBS, Am. Compl. ¶ 65; (3) Taube's determination of whether to refund consumers who requested cancellations and refunds as a result of misrepresentations regarding the medical discount plan, Am. Compl. ¶ 68; and (4) Holson's oversight of the sale and administration of the medical discount plan, Am. Compl. ¶ 71.

---

whether de facto board meetings or not—instead shed light on the GTLI Individual Defendants' knowledge concerning the representations at issue in the case.

[13] The court in Federal Trade Commission v. Wellness Support Network, Inc., No. C–10–04879 JCS, 2011 WL 1303419, at *11 (N.D. Cal. Apr. 4, 2011), upon which the GTLI Individual Defendants also rely, granted a motion to dismiss the claim against an individual defendant for the same reason—where "the only factual allegation . . . about [the individual defendant] is that she was an officer of [the corporate defendant]."

18

Meanwhile, in <u>Federal Trade Commision v. Benning</u>, No. C 09-03814 RS, 2010 WL 2605178, at *5-6 (N.D. Cal. June 28, 2010), a later decision in the same case as <u>Swish</u> and involving the same individual defendant, the court found that the amended complaint did in fact sufficiently allege individual liability under the FTC Act where the FTC averred that the individual defendant owned 30% of the closely-held corporate defendant and that he received and responded to emails detailing the possibly fraudulent nature of the corporate defendant's alleged misrepresentations.  As the FTC correctly notes, however, this case offers "little discussion of what 'floor' is required to meet the minimum threshold for pleading individual liability," Pl.'s Opp'n at 30 n.19, and is thus of limited usefulness.  The same is true with respect to the other cases upon which the GTLI Individual Defendants rely.  <u>See</u> <u>Wellness Support Network, Inc.</u>, 2011 WL 1303419, at *10 (motion to dismiss FTC Act claim against individual defendant denied where FTC alleged that he was president and owner of corporate defendant, the corporation was closely held, and he controlled or participated in the corporation's advertising and marketing); <u>Fed. Trade Comm'n v. Innovative Mktg., Inc.</u>, 654 F. Supp. 2d 378, 388 (D. Md. 2009) (motion to dismiss FTC Act claim against individual defendants denied where FTC alleged, among other things, that individual defendants, a corporate officer and his father, harbored millions of dollars of proceeds from marketing scheme); <u>Fed. Trade. Comm'n. v. Network Servs. Depot, Inc.</u>, 617 F.3d 1127, 1140 (9th Cir. 2010) (affirming finding of personal liability of individual defendants on summary judgment where, among other things, they were aware of numerous warning signs regarding the suspicious practices of one of their company's business partners).[14]

---

[14] The GTLI Defendants advance the argument that the "generic group pleading"

19

For all of the foregoing reasons, the GTLI Individual Defendants' motion dismiss the FTC Act claims against them is DENIED.[15]

Finally, the GTLI Defendants contend the FTC has failed to sufficiently allege claims against them for violations of the TSR, merely pointing the Court to their prior briefing on the issue.  GTLI's Mem. at 16.  With respect to the GTLI Defendants' argument that the amended complaint fails to sufficiently allege a violation of the TSR based on a theory of substantial assistance, the Court has already rejected this argument, and the GTLI Defendants have provided no reason for it to revisit rulings that are now the law of the case.  See Order at 8-9 ("[T]he amended complaint contains sufficient factual allegations to support a claim that the nature of these defendants' assistance was more than mere casual or incidental dealing with a seller or telemarketer

---

relating all of the defendants in this action is of little use to the Court in assessing the sufficiency of the claims against them.  See, e.g., GTLI's Mem. at 7 ("Here, the FTC claims that each of fifteen defendants collectively: (i) solicited consumers seeking major medical health insurance; and (ii) falsely represented plan discounts, participating providers and the plan's cancellation and refund policy.  These allegations, which do not specify which of the fifteen defendants made which misrepresentations, fail to satisfy either Rule 8 or Rule 9(b)." (internal citations omitted)).  Notably, the court in Innovative Marketing rejected nearly the identical argument.  See 645 F. Supp. 2d at 388 n.3 ("[The individual defendant] contends that in weighing the sufficiency of the Complaint, this Court should disregard the allegations relating to the Defendants collectively.  However, [his] argument is misguided.  The allegations pertaining to the Defendants as a whole provide the context that allows this Court to understand and weigh the significance of the claims specifically relating to [the individual defendant.]").

[15]  Contrary to their contention that the amended complaint names Holson, Burman, and Taube in both their official and individual capacities, GTLI's Mem. at 10 n.4, the amended complaint simply alleges that these defendants are jointly and severally liable for the acts of the Corporate Defendants, Am. Compl. ¶ 21.  Accordingly, the GTLI Defendants' application to strike the designation "individually" from the amended complaint is also denied.

that is unrelated to the violation of the Rule." (internal quotation marks and citation omitted)).  As for their contention that the amended complaint fails to sufficiently allege a direct violation of the TSR because none of the GTLI Defendants are "sellers" or "telemarketers" within the meaning of the rule, GTLI's Reply at 8, the Court finds this contention unpersuasive.  Though it is true, as the GTLI Defendants contend, that only "sellers" or "telemarketers" can be held liable for direct TSR violations, 16 C.F.R. § 310.3(a),[16] there is no question that NBC and NBS—two of the Corporate Defendants—constitute sellers and telemarketers, Am. Compl. ¶¶ 24, 25, and that under the FTC's common enterprise theory this status may be imputed to the GTLI Corporate Defendants, CHBA, and NAFA, all of whose actions the GTLI Individual Defendants may be held jointly and severally liable for.  See, e.g., Fed. Trade Comm'n v. Wash. Data Res., — F. Supp. 2d. —, No. 09 Civ. 2309–T–23–TBM, 2012 WL 1415323, at *20 (M.D. Fla. Apr. 23, 2012) ("[A]n act by one entity constitutes an act by each entity comprising the 'common enterprise.'").

### 3.  The GTLI Defendants' Motion for a More Definite Statement is Denied

The GTLI Defendants argue in the alternative that if the Court declines to dismiss the claims against them, it should require the FTC to provide a more definite statement

---

[16] The Telemarketing Act defines "telemarketing" as a "plan, program, or campaign which is conducted to induce purchases of goods or services . . . by use of one or more telephones and which involves more than one interstate telephone call."  15 U.S.C. § 6106(4).  Telemarketer "means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor."  16 C.F.R. § 310.2(cc).  Seller "means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration."  Id. § 310.2(aa).

21

pursuant to Fed. R. Civ. P. 12(e).  Specifically, the GTLI Defendants maintain that "[t]o sustain each of the claims it asserts against the GTL Defendants, the FTC must definitely state the specific FTC Act or TSR violation and role of each GTL Defendant with respect thereto."  GTLI's Mem. at 17.  Yet the Court has no basis on which to require any more definite statement by the FTC.   The amended complaint is hardly incomprehensible or unintelligible, and its narrative with respect to each of the GTLI Defendants' roles in the common enterprise is sufficient to put them on notice of the claims against them.[17]  A motion for a more definite statement is not meant to serve as a substitute for discovery.  See, e.g., Joya, 2008 WL 4667987, at *1 ("'The preferred course is to encourage the use of discovery procedures to apprise the parties of the factual basis of the claims made in the pleadings.'" (quoting In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., No. 00 Civ. 1898 (SAS), MDL 1358, 2005 WL 1500893, at *2 (S.D.N.Y. June 24, 2005))).  Accordingly, "[t]he appropriate means for attending to the business of particularizing and specifying issues raised by [the amended complaint] are the procedures of pretrial discovery set forth in Rules 26-37 of the Federal Rules of Civil Procedure, to which the parties are hereby commended."  777388 Ontario Ltd. v. Lencore Acoustics Corp., 105 F. Supp. 2d 56, 65-66 (E.D.N.Y. 2000).  The GTLI Defendant's motion for a more definite statement is thus DENIED.

---

[17] Neither of the cases upon which the GTLI Defendants rely involves a common enterprise among the defendants.  See Caraveo v. Nielsen Media Res., Inc., No. 01 Civ. 9609 (LBS), 2002 WL 530993, at *2-4 (S.D.N.Y. Apr. 8, 2002) (Rule 12(e) motion granted where pro se plaintiff alleged 30 causes of action against 25 defendants and failed to identify the specific defendants against whom he was asserting each of his causes of action); Bower v. Weisman, 639 F. Supp. 532, 538 (S.D.N.Y. 1986) (Rule 12(e) motion granted where defendant could not determine whether claims were brought against him in his individual capacity or against the two business he owned).

### III.   CONCLUSION

For all of the foregoing reasons, Tow, Schwartz, and the GTLI Defendants'

motions to dismiss pursuant to Rule 12(b)(6) and Rule 9(b) are DENIED.  The

GTLI Defendants' motion for a more definite statement pursuant to Rule 12(e) is

also DENIED.

SO ORDERED.

Dated:        Brooklyn, New York
              May 21, 2012


                                        _____/s/_____

                                        I. Leo Glasser
                                        Senior United States District Judge

23